**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **JUDICIAL WATCH, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:15-cv-01740-RBW** |
| | ) | |
| **NATIONAL ARCHIVES AND** | ) | |
| **RECORDS ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................1

FACTUAL BACKGROUND........................................................................2

ARGUMENT: NARA IS ENTITLED TO SUMMARY JUDGMENT ..........................................4

I.  NARA HAS CONDUCTED A REASONABLE SEARCH FOR DRAFTS OF THE PROPOSED INDICTMENT ..................................................................5

II.  THE DRAFTS OF THE PROPOSED INDICTMENT ARE PROTECTED FROM DISCLOSURE BY FOIA EXEMPTION 3 AND FED. R. CRIM. P. 6(e) BECAUSE DISCLOSURE OF THE DRAFTS WOULD TEND TO REVEAL THE SECRET WORKINGS OF THE GRAND JURY...............................................6

III.  THE DRAFTS OF THE PROPOSED INDICTMENT ARE PROTECTED FROM DISCLOSURE BY FOIA EXEMPTIONS 7(C) AND 6 BECAUSE THE DRAFTS INVOLVE A SIGNIFICANT PRIVACY INTEREST THAT IS NOT OUTWEIGHED BY ANY PUBLIC INTEREST IN DISCLOSURE THAT PLAINTIFF HAS ARTICULATED....................................................................9

    A.  THE DRAFTS OF THE PROPOSED INDICTMENT ARE PROTECTED FROM DISCLOSURE BY EXEMPTION 7(C) ....................................................9

        1.  THE DRAFTS OF THE PROPOSED INDICTMENT WERE COMPILED FOR LAW ENFORCEMENT PURPOSES...........................................9

        2.  DISCLOSURE OF THE DRAFTS OF THE PROPOSED INDICTMENT CAN REASONABLY BE EXPECTED TO CONSTITUTE AN UNWARRANTED INVASION OF PERSONAL PRIVACY....................................................10

            a.  Mrs. Clinton Has a Significant Personal Privacy Interest in Avoiding Disclosure of the Drafts of the Proposed Indictment.....10

            b.  The Interest of Mrs. Clinton in Avoiding Disclosure of the Drafts Is Not Overcome by Any Public Interest in Disclosure that Plaintiff Has Articulated ..............................................12

    B.  THE DRAFTS OF THE PROPOSED INDICTMENT ARE PROTECTED FROM DISCLOSURE BY EXEMPTION 6 ....................................................14

CONCLUSION.................................................................................15

## TABLE OF CASES

Page

*Abdeljabbar v. Bur. of Alcohol, Tobacco & Firearms*, 74 F.3d 158 (D.D.C. 2014) ......................4

*ACLU v. Dep't of Justice (DOJ)*, 655 F.3d 1 (D.C. Cir. 2011) ....................................11

*ACLU v. DOJ,* 750 F.3d 927 (D.C. Cir. 2014) ...............................................14

*Beck v. DOJ*, 997 F.2d 1489 (D.C. Cir. 1993)..............................................15

*Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2011) ...............................................9

*Boehm v. FBI*, 948 F. Supp. 2d 9 (D.D.C. 2013) ..............................................8

*Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014) ...........................11

*Computer Professionals for Soc. Resp. v. Secret Serv.*, 72 F.3d 897 (D.C. Cir. 1996) ................13

*Dep't of Def. v. Fed. Labor Rel. Auth.*, 510 U.S. 487 (1994) .......................................13

*Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1 (2001)..............................4

*DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ...................................2

*Freedom Watch v. NSA*, 783 F.3d 1340 (D.C. Cir. 2015) ..............................................5

*Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856 (D.C. Cir. 1981) ......7, 11

*Kowalczyk v. DOJ*, 73 F.3d 386 (D.C. Cir. 1996) ....................................................5, 6

*Lopez v. DOJ*, 393 F.3d 1345 (D.C. Cir. 2005) ......................................................7

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ....................................................5, 7

*Morrison v. Olson*, 487 U.S. 654 (1988) ..........................................................1

*Murphy v. Exec. Office for U.S. Att'ys*, 789 F.3d 204 (D.C. Cir. 2015) ....................................6, 7

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 147 (2004) .............................9, 10, 12, 13

*Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 (D.C. Cir. 2015) .............................5, 14, 15

*Stern v. FBI*, 737 F.2d 84 (D.C. Cir. 1984)..........................................................10, 11

*Valencia-Lucena v. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ...............................................5, 6

## PRELIMINARY STATEMENT

"[T]he appointment of an 'independent counsel' to investigate and, if appropriate, prosecute certain high-ranking Government officials for violation of federal criminal laws" was "allow[ed] for" by Title VI of the Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1867. *Morrison v. Olson*, 487 U.S. 654, 660 (1988). Title VI expired by its terms on June 30, 1999. *See* 28 U.S.C. § 599.[1]

Defendant, the National Archives and Records Administration (NARA), maintains custody of the records of the independent counsels who served under Title VI. Decl. of Martha Wagner Murphy (Murphy Decl.), Ex. A hereto, ¶ 15. The records maintained by NARA include the records of Kenneth W. Starr and his successors. *Id.* ¶ 18. Mr. Starr served as an independent counsel under Title VI from 1994 until 1999; his successors served until 2004. *Id.* Included among the records of Mr. Starr and his successors are drafts of a proposed indictment of Hillary Rodham Clinton. *Id.* ¶ 23.

Plaintiff, Judicial Watch, seeks an order under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, directing NARA to produce the drafts of the proposed indictment. *See* Compl., ECF No. 1, ¶ 11 & Prayer. Instead of issuing such an order, the Court should award NARA summary judgment. NARA is entitled to summary judgment because it has searched appropriately for drafts of the proposed indictment. NARA is also entitled to summary judgment because the drafts of the proposed indictment are protected from disclosure by FOIA Exemption 3 and Fed. R. Crim. P. 6(e) and, separately, by FOIA Exemptions 7(C) and (6). The drafts are protected from disclosure by Exemption 3 and Rule 6(e) because their disclosure would tend to

---

[1] Section 599 provides with certain exceptions that "[t]his chapter shall cease to be effective five years after the date of the enactment of the Independent Counsel Restoration Act of 1994." The Independent Counsel Restoration Act of 1994, Pub. L. No. 103-270, 108 Stat. 732, was enacted on June 30, 1994.

reveal the secret workings of the grand jury.  The drafts are also protected from disclosure by

Exemptions 7(C) and 6 because the drafts involve a significant privacy interest that is not

outweighed by any public interest in disclosure that plaintiff has articulated.[2]

## FACTUAL BACKGROUND

### A.    THE UNIVERSE OF RECORDS AND THE INDEX

The records of Mr. Starr and his successors fill approximately 3149 cubic feet of space at

NARA.  Murphy Decl. ¶ 19.  An index to those records was prepared by the second and last of

Mr. Starr's successors and her staff in connection with the transfer of the records to NARA.[3]  *Id.*

A copy of that index was provided to plaintiff by NARA in May 2015.  *Id.* ¶ 19 n.7.

### B.    THE FOIA REQUEST AND THE SEARCH

By letter dated March 9, 2015, plaintiff submitted a FOIA request to NARA for the

following records:

> All versions of indictments against Hillary Rodham Clinton, including, but not
> limited to, Versions 1, 2, and 3 in box 2250 of the Hickman Ewing Attorney Files,
> the "HRC/__Draft Indictment" in box 2256 of the Hickman Ewing Attorney Files,
> as well as any all versions written by Deputy Independent Counsel Hickman
> Ewing, Jr. prior to September of 1996.

Murphy Decl. ¶ 6.  Hickman Ewing was a lawyer who worked as Kenneth Starr's deputy in

Little Rock.  *Id.* ¶ 6 n.2.  Plaintiff said in its request that "[t]he records in question are located in

the material submitted to [NARA] by the Office of Independent Counsel In Re: Madison

Guaranty Savings & Loan Association, also known as 'the records of IC Starr.'"  *Id.* ¶ 6.

---

[2] FOIA "directs the district courts to 'determine the matter de novo'" where, as here, a requester challenges an agency's withholding of records.  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).  For that reason, NARA is not limited in this action by its reliance at the administrative stage exclusively on Exemption 7(C).

[3] An independent counsel was required by Title VI to "transfer to the Archivist of the United States all records which ha[d] been created or received" by the counsel's office upon termination of that office.  28 U.S.C. § 594(k)(1).  NARA is administered "under the supervision and direction of the Archivist."  44 U.S.C. § 2102.

NARA responded to plaintiff's request by locating the two boxes in the records of Mr. Starr and his successors to which the request referred, Boxes 2250 and 2256.  Murphy Decl. ¶¶ 20-21.  Both boxes bear the name, "Hickman Ewing Attorney Work Product"; both boxes bear the heading "HRC," the initials of Hillary Rodham Clinton; and both boxes state on their face that their contents include "material subject to Rule 6(e) of the Federal Rules of Criminal Procedure."[4]  *Id.* ¶ 20.  Box 2250 contains a folder labeled "Draft Indictment." *Id.*  Box 2256 contains a folder labelled "Hillary Rodham Clinton/Webster L. Hubbell Draft Indictment."  *Id.* Multiple drafts of the proposed indictment of Mrs. Clinton were located by NARA within these folders.  *See id.* ¶ 21 & Ex. A.

NARA also responded to plaintiff's FOIA request by "search[ing] the 'Box Contents' and 'Subject' fields [of the index to the records of Mr. Starr and his successors] to identify any other folders that could contain 'Indictment' and 'Hillary Rodham Clinton" or 'Hillary Clinton' or 'HRC.'"  Murphy Decl. ¶ 21.  This search "did not locate any other responsive folders."  *Id.*

Each of the drafts of the proposed indictment that NARA located is marked on its face as a draft; is denominated as a draft in accompanying cover memos; or shows through its incompleteness that it is a draft.  Murphy Decl. ¶ 23.  Some of the drafts contain marginalia or annotations; some are identical duplicates of each other; some are non-identical duplicates; some are accompanied by cover memos; some are accompanied by handwritten notes on separate pieces of paper; and some are accompanied by fax cover sheets.  *Id.*  One of the drafts consists merely of "scraps of a draft indictment."  *Id.*  NARA is withholding each of the drafts in full pursuant to FOIA Exemption 3 and Rule 6(e), *id.* ¶ 25, and, separately, pursuant to FOIA

---

[4] Before transferring records to the Archivist of the United States, an independent counsel was required by Title VI to "clearly identify" which of the records was "subject to Rule 6(e) of the Federal Rules of Criminal Procedure as grand jury materials."  28 U.S.C. § 594(k)(1).

Exemptions 7(C) and 6.  *Id.* ¶ 35.  No indictment of Mrs. Clinton was ever issued, *id.* ¶ 34, and no charges against her were ever brought.  *Id.* ¶ 35.

### C.   THE ADMINISTRATIVE APPEAL AND THIS ACTION

By letter dated March 19, 2015, NARA advised plaintiff that it had "examined the folders from Hickman Ewing's attorney files that you requested" and was withholding the following records "in full" pursuant to FOIA Exemption 7(C): "From box 2250 the folder 'Draft Indictment' (38 pages) . . . From box 2256 the folder 'Hillary Rodham Clinton/Webster L. Hubbell Draft [Indictment] (approximately 200 pages)."  Murphy Decl. ¶ 8.  The records to which NARA referred in its letter included records other than drafts of the proposed indictment. *See id.* ¶ 22.

By letter dated May 14, 2015, plaintiff appealed administratively the withholding of the above records.  Murphy Decl. ¶ 9.  By letter dated October 16, 2015, NARA advised plaintiff that its administrative appeal had been placed into the processing queue.  *Id.* ¶ 10.  On October 20, 2015, plaintiff commenced this action.  *Id.* ¶ 11.  NARA's FOIA regulations provide that "NARA will cease processing an appeal if a requester files a FOIA lawsuit."  36 C.F.R. § 1250.74(a)(2).  In accordance with § 1250.74(a)(2), plaintiff's commencement of this action caused NARA to close plaintiff's administrative appeal.  Murphy Decl. ¶ 12.

## ARGUMENT

## NARA IS ENTITLED TO SUMMARY JUDGMENT.

"Upon request, FOIA mandates disclosure of records held by a federal agency, *see* 5 U.S.C. § 552, unless the documents fall within enumerated exemptions, *see* § 552(b)."  *Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 7 (2001).  "'FOIA cases typically and appropriately are decided on motions for summary judgment.'"  *Abdeljabbar v. Bur. of*

*Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 167 (D.D.C. 2014) (Walton, J.) (quoting

*ViroPharma Inc. v. Dep't of HHS*, 839 F. Supp. 2d 184, 189 (D.D.C. 2012)).  "To prevail on

summary judgment, the defending 'agency must show beyond material doubt [] that it has

conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*,

508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. Dep't of Justice (DOJ)*, 705 F.2d

1344, 1351 (D.C. Cir. 1983)).  In addition, the agency must show that the "withheld or redacted

documents are not required to be disclosed under § 552(a) or are exempt from disclosure under

§ 552(b)." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 (D.C. Cir. 2015).  In this case,

NARA meets both of those requirements because it has conducted a reasonable search for drafts

of the proposed indictment and because the drafts it has located are protected from disclosure by

FOIA Exemption 3 and Fed. R. Crim. P. 6(e) and, separately, by FOIA Exemptions 7(C) and 6.

NARA is therefore entitled to summary judgment.

## I.    NARA HAS CONDUCTED A REASONABLE SEARCH FOR DRAFTS OF THE PROPOSED INDICTMENT.

The duty of an agency under FOIA is limited to "'conduct[ing] a search reasonably

calculated to uncover all relevant documents.'"  *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir.

1996) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  "[A]utomated

searches" consisting of "electronic key-word searches" are permissible.  *Freedom Watch v. NSA*,

783 F.3d 1340, 1343, 1345 (D.C. Cir. 2015).  "The agency is not required to speculate about

potential leads . . . [or] to look beyond the four corners of the request for leads to the location of

responsive documents.'"  *Kowalczyk*, 73 F.3d at 389.  Neither is the agency required to subject

itself to "undue burden" in searching for responsive records.  *Valencia-Lucena v. Coast Guard*,

180 F.3d 321, 327 (D.C. Cir. 1999).  The adequacy of a search does not depend on "whether

there might be any further documents."  *Kowalczyk*, 73 F.3d at 388.

In this case, plaintiff submitted a FOIA request to NARA for "[a]ll versions of indictments of Hillary Rodham Clinton," including those contained in "box 2250" and "box 2256" of the "Hickman Ewing Attorney Files" in the "'records of IC Starr.'"  Murphy Decl. ¶ 6. NARA responded to plaintiff's request by "examin[ing] the folders from Hickman Ewing's attorney files" to which the request referred and by drawing from those folders the drafts of the proposed indictment that the folders contained.  *Id.* ¶¶ 8, 20-21.  To try to find other drafts of the proposed indictment, NARA searched the index to the records of Mr. Starr and his successors for "any other folders that might contain 'Indictment' and 'Hillary Rodham Clinton' or 'Hillary Clinton' or 'HRC'" but "did not locate any other responsive folders."  *Id.* ¶ 21.  Plaintiff has been given a copy of the above index, *id.* ¶ 19 n.7, but does not allege in its complaint that NARA ought to have searched any additional folders.  NARA had no obligation to search the records of Mr. Starr and his successors on a document-by-document basis because the above records fill approximately 3149 cubic feet of space at NARA, *id.* ¶ 19, and because a document-by-document search of the above records would have subjected NARA to "undue burden."  *See Valencia-Lucena*, 180 F.3d at 327.  NARA therefore "'conducted a search reasonably calculated to uncover all [drafts of the proposed indictment],'" *see Kowalczyk,* 73 F.3d at 389 (quoting *Truitt*, 897 F.2d at 542), and therefore conducted a search for the drafts that meets the requirements of FOIA.

## II.   THE DRAFTS OF THE PROPOSED INDICTMENT ARE PROTECTED FROM DISCLOSURE BY FOIA EXEMPTION 3 AND FED. R. CRIM. P. 6(e) BECAUSE DISCLOSURE OF THE DRAFTS WOULD TEND TO REVEAL THE SECRET WORKINGS OF THE GRAND JURY.

FOIA Exemption 3 "permits an agency to withhold records that are 'specifically exempted from disclosure by statute.'"  *Murphy v. Exec. Office for U.S. Att'ys*, 789 F.3d 204, 206 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(3)).  "'Exemption 3 differs from other FOIA

exemptions in that its applicability depends less on the detailed factual contents of specific documents'" and depends instead on "'the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" *Morley*, 508 F.3d at 1126 (quoting *Ass'n of Retired R.R. Workers v. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)).

"[R]equests for documents related to grand jury investigations implicate [Exemption 3], because Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government attorneys and others from 'disclos[ing] a matter occurring before the grand jury.'" *Lopez v. DOJ*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (quoting Rule 6(e)(2)(B)). Though part of the federal criminal rules, Rule 6(e) is treated as a statute for purposes of Exemption 3 "because the Congress has enacted it into positive law." *Murphy*, 789 F.3d at 206. The "grand jury secrecy" that Rule 6(e) protects "encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like." *Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (quoting *SEC v. Dresser Indus.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)). For that reason, the "relevant inquiry" in cases where records are withheld pursuant to Exemption 3 and Rule 6(e) is whether the disclosure of the records "would 'tend to reveal some secret aspect of the grand jury's investigation.'" *Lopez*, 393 F.3d at 1349 (quoting *Senate of P.R. v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987)). "[T]he basis for invoking [E]xemption 3 need only be 'logical or plausible.'" *Murphy*, 789 F.3d at 211 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). For that reason, Rule 6(e) is "properly invoked" as a justification for withholding under Exemption 3 "if 'the disclosed material would *tend* to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses.'" *Id.* at 209-10

(quoting *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013)).   "A tendency need only make a result more likely."   *Id.*

In this case, the drafts of the proposed indictment of Mrs. Clinton are housed at NARA in boxes stating on their face that their contents include material "subject to Rule 6(e) of the Federal Rules of Criminal Procedure."   Murphy Decl. ¶ 20.   The material in the boxes to which Rule 6(e) applies includes the drafts of the proposed indictment because the drafts are "directly related to the Independent Counsel's consideration of presenting an indictment to a grand jury."   *Id.* ¶ 25. Collectively, the drafts "reflect[] names and identifying information of individuals subpoenaed – or intended to be subpoenaed – to testify before the grand jury, as well as information identifying specific records subpoenaed during the grand jury process."   *Id.*   In addition, the drafts "reflect and quote grand jury testimony, and reveal the inner workings and direction of the grand jury." *Id.*   The disclosure of the drafts would therefore "violate the secrecy of the grand jury proceedings" in contravention of Rule 6(e) "by disclosing the inner workings of the federal grand jury tasked with considering these matters."   *Id.*

In *Boehm v. FBI*, 948 F. Supp. 2d 9 (D.D.C. 2013), the withholding of a "draft of a grand jury indictment" was held permissible under Exemption 3 and Rule 6(e) because the disclosure of the draft "would tend to reveal the secret workings of the grand jury."   948 F. Supp. 2d at 27. The same rationale applies with equal force to the drafts of the proposed indictment at issue here. The drafts are therefore protected from disclosure by Exemption 3 and Rule 6(e).

III.   **THE DRAFTS OF THE PROPOSED INDICTMENT ARE PROTECTED FROM DISCLOSURE BY FOIA EXEMPTIONS 7(C) AND 6 BECAUSE THE DRAFTS INVOLVE A SIGNIFICANT PRIVACY INTEREST THAT IS NOT OUTWEIGHED BY ANY PUBLIC INTEREST IN DISCLOSURE THAT PLAINTIFF HAS ARTICULATED.**

A.   **THE DRAFTS OF THE PROPOSED INDICTMENT ARE PROTECTED FROM DISCLOSURE BY EXEMPTION 7(C).**

"Exemption 7(C) authorizes the Government to withhold law enforcement records that 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting 5 U.S.C. § 552(b)(7)(C)).  Two questions must be answered in cases where Exemption 7(C) is invoked as a basis for withholding.  *See NARA v. Favish*, 541 U.S. 147, 164 (2004).  The first is whether the withheld records or information were "'compiled for law enforcement purposes' as that phrase is used in Exemption 7(C)."  *Id.*  The second is whether disclosure of the withheld records or information "'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"  *Id.* In this case, the drafts of the proposed indictment of Mrs. Clinton are protected from disclosure by Exemption 7(C) because the drafts were compiled for law enforcement purposes and because their disclosure can reasonably be expected to constitute an unwarranted invasion of personal privacy.

1.   *THE DRAFTS OF THE PROPOSED INDICTMENT WERE COMPILED FOR LAW ENFORCEMENT PURPOSES.*

"To show that [records] were 'compiled for law enforcement purposes,' [an agency] need only 'establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'"  *Blackwell*, 646 F.3d at 40 (quoting *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998)).  Records generated "in the course of investigating and prosecuting [an

individual] on [criminal] charges" are records that meet this standard.  *Id.*  In this case, the drafts

of the proposed indictment of Mrs. Clinton were compiled "for criminal law enforcement

purposes during the course of the Independent Counsel's performance of [his] statutorily-

imposed law enforcement mission: to investigate and, if appropriate, prosecute certain high-

ranking Government officials for violation of federal criminal laws."  Murphy Decl. ¶ 27.  For

that reason, the drafts meet the threshold requirement of Exemption 7(C).

> ### 2.   *DISCLOSURE OF THE DRAFTS OF THE PROPOSED INDICTMENT CAN REASONABLY BE EXPECTED TO CONSTITUTE AN UNWARRANTED INVASION OF PERSONAL PRIVACY.*

A claim that records or information may be withheld under Exemption 7(C) requires the

court to determine as a threshold matter whether any person has a "personal privacy interest" in

avoiding disclosure of the records or information to which the claim applies.  *See Favish*, 541

U.S. at 165.  If such an interest is found to exist, the court must then determine whether the

disclosure of the records or information "'could reasonably be expected to constitute an

unwarranted invasion' of the [person's] personal privacy."  *Id.* at 171.  In making that

determination, "[t]he term 'unwarranted' requires [the court] to balance the [person's] privacy

interest against the public interest in disclosure."  *Id.*

In this case, Mrs. Clinton has a significant personal privacy interest in avoiding

disclosure of the drafts of the proposed indictment.  Because that interest is not overcome by any

public interest in disclosure that plaintiff has articulated, the drafts are protected from disclosure

by Exemption 7(C).

> ### a.   Mrs. Clinton Has a Significant Personal Privacy Interest in Avoiding Disclosure of the Drafts of the Proposed Indictment.

"[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged

criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984), and thus have "'an obvious

privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation.'" *Citizens for Resp. & Ethics in Wash. (CREW) v. DOJ*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) (quoting *Nation Mag. v. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995)).  The above interest is particularly great in the case of "individuals who have been investigated but never publicly charged at all." *ACLU v. DOJ*, 655 F.3d 1, 7 (D.C. Cir. 2011).  That interest is not vitiated in cases where "the individuals are public figures [or] high level government or corporate officials," *Fund for Const. Gov't*, 656 F.2d at 864, or in cases where the investigations attracted "national attention." *Id.* at 865.  To the contrary, "[t]he degree of intrusion" caused by "revelation of the fact that an individual has been investigated for suspected criminal activity" is "potentially augmented by the fact that the individual is a well[-] known figure and the investigation one which attracts . . . much national attention" because "[t]he disclosure of that information would produce the unwarranted result of placing the [individual] in the position of having to defend [his or her] conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings." *Id.*

In this case, the drafts of the proposed indictment of Mrs. Clinton are drafts of an indictment that was never issued.  Murphy Decl. ¶ 34.  No less than anyone else, Mrs. Clinton has "a strong interest in not being associated unwarrantedly with alleged criminal activity." *See Stern*, 737 F.2d at 91-92.  That interest persists even though the existence of the drafts is publicly known because the content of the drafts has not been disclosed.  Mrs. Clinton thus has a significant personal privacy interest in avoiding disclosure of the drafts.

**b.      The Interest of Mrs. Clinton in Avoiding Disclosure of the Drafts Is Not Overcome by Any Public Interest in Disclosure that Plaintiff Has Articulated.**

"Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure." *Favish*, 541 U.S. at 172.  "First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake."  *Id.*  "Second, the citizen must show the information is likely to advance that interest."  *Id.*

In this case, plaintiff has given two reasons why the drafts of the proposed indictment should be disclosed.  Neither of those reasons articulates a public interest in disclosure of the drafts that overcomes the personal privacy interest of Mrs. Clinton in avoiding their disclosure.

First, plaintiff contends that "the justification most likely to satisfy Exemption 7(C)'s public interest requirement is that the information is necessary to show that the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties."  Murphy Decl. ¶ 9.  "Allegations of government misconduct are 'easy to allege,'" however, "'and hard to disprove.'"  *Favish*, 541 U.S. at 175 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)).  "[A] presumption of legitimacy" is thus "accorded to the Government's official conduct."  *Id.* at 174.  For that reason, a FOIA requester "must establish more than a bare suspicion in order to obtain disclosure" in any case in which "a privacy interest [is] protected by Exemption 7(C) and the public interest being asserted is to show that the responsible officials acted negligently or otherwise improperly in the performance of their duties."  *Id.*  Because this standard requires the requester to produce "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred," *id.*, the "'public interest [in disclosure] is insubstantial'" in any case in which

12

"'governmental misconduct is alleged as the justification for disclosure . . . unless the requester puts forward compelling evidence that the agency . . . engaged in illegal activity and shows that the information is necessary in order to confirm or refute that evidence.'"  *Computer Professionals for Soc. Resp. v. Secret Serv.*, 72 F.3d 897, 905 (D.C. Cir. 1996) (quoting *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)).

In this case, plaintiff does not allege that Mr. Starr or any member of his staff "acted negligently or otherwise improperly in the performance of [his or her] duties." *See Favish*, 541 U.S. at 174.  Those duties, as noted above, were completed more than a decade ago.  Much less does plaintiff "produce evidence that would warrant a belief by a reasonable person" that any such allegation would have any merit.  *See id*.  Still less does plaintiff produce any evidence that disclosure of the drafts of the proposed indictment would be likely to provide any information substantiating any such allegation.  For those reasons, plaintiff cannot rely on any allegation of official impropriety to overcome the personal privacy interest in avoiding disclosure of the drafts that Mrs. Clinton possesses.

Second, plaintiff alleges that Mrs. Clinton "is a highly public figure who has exercised vast political power throughout her career" and that, accordingly, "[t]he public interest in records concerning possible unlawful activity on her part far outweighs the privacy interest of [Exemption 7(C)]."  Murphy Decl. ¶ 9.  This allegation is unpersuasive because "the only relevant interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Dep't of Def. v. Fed. Labor Rel. Auth.*, 510 U.S. 487, 497 (1994) (quoting *Reporters Comm.*, 489 U.S. at 773).  In this case, any information contained in the drafts of the proposed indictment is information about Mrs. Clinton

13

or other individuals, not information that would "'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *See id.*

In addition, '[t]he presumption of innocence stands as one of the most fundamental principles of our system of criminal justice: defendants are considered innocent unless and until the prosecution proves their guilt beyond a reasonable doubt."  *ACLU v. DOJ*, 750 F.3d 927, 933 (D.C. Cir. 2014).  In view of that presumption, "individuals who have been charged with but never convicted of a crime" have a "fundamental interest" in "preventing the repeated disclosure" of the fact of their involvement in the criminal process.  *Id.* at 935.  Information about an individual's involvement in the criminal process is thus protected from disclosure by Exemption 7(C) because disclosure of that involvement "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.*

In this case, Mrs. Clinton was never indicted, Murphy Decl. ¶ 34, or otherwise charged with a crime.  *Id.* ¶ 35.  She thus has an even stronger interest in avoiding disclosure of the drafts of the proposed indictment than a person who has been indicted but acquitted or a person against whom charges were brought but later dropped.  Her interest in avoiding disclosure of the drafts is not diminished by the fact that she is a former public official who is running for President.  The drafts of the proposed indictment are therefore protected from disclosure by Exemption 7(C).

## B.   THE DRAFTS OF THE PROPOSED INDICTMENT ARE PROTECTED FROM DISCLOSURE BY EXEMPTION 6.

Exemption 6 "shields from disclosure 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'"  *Prison Legal News*, 787 F.3d at 1146 (quoting 5 U.S.C. § 552(b)(6)).  Exemption 6 applies to "'detailed Government records on an individual which can be identified as applying to that individual.'"  *Id.* at 1147 (quoting *Judicial Watch v. DOJ*, 365 F.3d 1108, 1124 (D.C. Cir. 2004).

14

Exemption 6 thus covers "'not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy.'" *Id.* (quoting *Judicial Watch  v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006)).

As is the case when records are withheld pursuant to Exemption 7(C), the withholding of records pursuant to Exemption 6 requires the court to "'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.'" *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting *Davis*, 968 F.2d at 1281). "The protection available" under the two exemptions "is not the same," however.  *Id.*

> Noting the use of the adverb "clearly" in Exemption 6 and its requirement that disclosure constitute an actual rather than a likely invasion of privacy, the Supreme Court has held that "the standard for evaluating a threatened invasion of privacy interests . . . is somewhat broader" under Exemption 7(C) than under Exemption 6.

*Id.* (quoting *Reporters Comm.*, 489 U.S. at 756).

For the reasons set forth in Point III(A)(1), *supra*, the drafts of the proposed indictment of Mrs. Clinton were compiled for law enforcement purposes and are therefore protected from disclosure by Exemption 7(C).  Even assuming, *arguendo*, that the drafts were compiled for a different purpose, they are "'detailed Government records on [Mrs. Clinton] which can be identified as applying to [Mrs. Clinton].'"  *See Prison Legal News*, 787 F.3d at 1147 (quoting *Judicial Watch*, 365 F.3d at 1124).  For the reasons set forth in Point III(A)(2)(b), *supra*, the interest of Mrs. Clinton in avoiding disclosure of the drafts is not overcome by any public interest in disclosure that plaintiff has articulated.  For that reason, the drafts are protected from disclosure as much by Exemption 6 as they are by Exemption 7(C).

## CONCLUSION

For the foregoing reasons, NARA's motion for summary judgment should be granted.

15

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CHANNING D. PHILIPS
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director

s/ *David M. Glass*
DAVID M. GLASS, DC Bar 544549
Senior Trial Counsel
Department of Justice, Civil Division
20 Massachusetts Ave., N.W., Room 7200
Washington, D.C.  20530-0001
Tel: (202) 514-4469/Fax: (202) 616-847
Dated: February 2, 2016                    E-mail: david.glass@usdoj.gov

16