*Judicial Watch v. Nat'l Archives & Records Admin.*
No. 1:15-cv-01740-RBW

Def. Mot. Summ. J.
Ex. A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC., )
)
   Plaintiff, )
)
      v. )    Civ. A. No. 15-CV-1740 (RBW)
)
NATIONAL ARCHIVES AND )
RECORDS ADMINISTRATION, )
)
   Defendant. )

## DECLARATION OF MARTHA WAGNER MURPHY

I, Martha Wagner Murphy, hereby declare as follows:

1.    I currently serve as Chief of the Special Access and Freedom of Information Act ("FOIA") Branch, Research Services, National Archives and Records Administration ("NARA") located in College Park, Maryland. I have held this position since 2009. Prior to this position, I was an Archivist in the Special Access and FOIA Staff from 1995 to 2009, and I have worked as an Archivist at NARA since 1991. I hold a Masters in U.S. History from Loyola University of Chicago, and a Bachelor of Arts in History from Loyola College of Baltimore.

2.    In my current position as the Chief of the Special Access and FOIA Staff, I supervise a total of 20 Archivists and one Government Information Specialist whose responsibilities are focused on providing access – either through special access requests or through FOIA – to thousands of pages of archival records. Each Archivist on my staff holds at least a Bachelors' degree in either History or a related subject matter, and over the course of time has become very familiar with the subject matters of the collections to which access is sought.

-1-

3.      Due to the nature of my official duties, I am familiar with the procedures followed by NARA in responding to requests for material from its archival collection pursuant to the provisions of the FOIA, 5 U.S.C. § 552.  I am also specifically aware of the handling of plaintiff Judicial Watch's March 9, 2015 FOIA request to NARA for "[a]ll versions of indictments against Hillary Rodham Clinton, including, but not limited to, Versions 1, 2, and 3 in box 2250 of the Hickman Ewing Attorney Files, the "HRC/__Draft Indictment" in box 2256 of the Hickman Ewing Attorney Files, as well as any all versions written by Deputy Independent Counsel Hickman Ewing, Jr. prior to September of 1996."

4.      In accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), I provide this declaration in support of NARA's motion for summary judgment and to provide justifications for the withholding of information in full from the total of 451 pages of documents[1] identified as responsive to plaintiff's request and further described in detail in **Exhibit A** attached hereto, pursuant to FOIA Exemptions 3, 6 and 7(C), 5 U.S.C. §§ 552 (b)(3),  (b)(6) and (b)(7)(C).

5.      The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

### Procedural History of Judicial Watch's FOIA Request

6.      By letter dated March 9, 2015, Judicial Watch submitted a FOIA request to NARA for:

> All versions of indictments against Hillary Rodham Clinton, including, but not limited to, Versions 1, 2, and 3 in box 2250 of the Hickman Ewing[2] Attorney Files, the "HRC/__Draft Indictment" in box 2256 of the

---

[1] The discrepancy in the total number of pages is attributable to the fact that at the administrative stage we did not include identical duplicates in our page count.

[2] Hickman Ewing was a lawyer who worked as Kenneth Starr's deputy in Little Rock.

Hickman Ewing Attorney Files, as well as any and all versions written by Deputy Independent Counsel Hickman Ewing, Jr. prior to September of 1996.

The records in question are located in the material submitted to the National Archives and Records Administration by the Office of Independent Counsel In Re: Madison Guaranty Savings & Loan Association, also known as "the records of IC Starr."[3]

*See* **Exhibit B**.

7.      My staff assigned the request FOIA No. 46068.

8.      By letter dated March 19, 2015, we informed Judicial Watch that "[w]e have examined the folders from Hickman Ewing's attorney files that you requested. From box 2250 the folder "Draft Indictment" (38 pages) is denied in full under Exemption (b)(7)(C). From box 2256 the folder "Hillary Rodham Clinton/Webster L. Hubbell Draft Indicment" (sic) (approximately 200 pages) is denied in full under Exemption (b)(7)(C)." (*See* **Exhibit C**). Our March 19, 2015 letter also provided Judicial Watch with administrative appeal rights.

9.      By letter dated May 14, 2015, Judicial Watch appealed NARA's denial under Exemption (b)(7)(C). In relevant part, Judicial Watch asserted that:

> [NARA's] response amounts to no more than a barren assertion that the responsive records are being withheld pursuant to FOIA Exemption (b)(7)(C)...it clearly has not met its burden under FOIA [to]...provide sufficient identifying information with respect to each of the records that it withheld to enable Judicial Watch to assess the propriety of the claimed exemption...[and] has failed to demonstrate that all non-exempt information has been segregated...[t]he Supreme Court has suggested that the justification most likely to satisfy Exemption 7(C)'s public interest requirement is that the information is necessary to show that the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties...Hillary Clinton is a highly public figure who has exercised political power throughout her career. The public interest in records concerning possible unlawful activity on her part far outweighs the privacy interest of (b)(7)(C).

---

[3] Plaintiff included a fee waiver request in its March 9, 2015 letter, but NARA did not address the request since it withheld all documents in full. Plaintiff does not raise the fee waiver issue in its Complaint.

10.    By letter dated October 16, 2015, NARA acknowledged receipt of the appeal, apologized for the delay in the acknowledgment, advised Judicial Watch that the request had been assigned FOIA Appeal No. NGC15-071A, and provided information on how Judicial Watch might obtain an update on the status of the appeal. *See* **Exhibit D**.

11.    On October 22, 2015, plaintiff filed the instant lawsuit.

12.    In accordance with 36 C.F.R. § 1250.74(a)(2), by letter dated December 4, 2015, NARA advised Judicial Watch it had administratively closed the appeal due to the filing of the lawsuit. *See* **Exhibit E.**

<u>**National Archives and Records Administration and its Holdings**</u>

13.    The National Archives was established in 1934 by President Franklin Roosevelt to preserve and care for the records of the U.S. Government, but its major holdings date back to 1775. They capture the sweep of the past: slave ship manifests and the Emancipation Proclamation; captured German records and the Japanese surrender documents from World War II; journals of polar expeditions and photographs of Dust Bowl farmers; Indian treaties making transitory promises; and a richly bound document bearing the bold signature "Bonaparte" — the Louisiana Purchase Treaty that doubled the territory of the young republic.

14.    In 1985, the National Archives became an independent executive agency, and it now has over 40 facilities nationwide including field archives, Federal Records Centers, Presidential Libraries, the Federal Register, and the National Historical Publications and Records Commission. NARA keeps only those Federal records that are judged to have continuing value — about two to five percent of those generated in any given year. By now, they add up to a formidable number, diverse in form as well as in content. There are approximately 10 billion pages of textual records; 12 million maps, charts, and architectural and engineering drawings; 25

-4-

million still photographs and graphics; 24 million aerial photographs; 300,000 reels of motion picture film; 400,000 video and sound recordings; and 133 terabytes of electronic data. All of these materials are preserved because they are important to the workings of Government, have long-term research worth, or provide information of value to citizens.[4]

15.     Among its many holdings, NARA maintains custody of the records of independent counsels who have completed their investigations.[5]  Title VI of the Ethics in Government Act of 1978, Pub. L. No. 97-521, 92 Stat. 1867, "allow[ed] for the appointment of an 'independent counsel' to investigate and, if appropriate, prosecute certain high-ranking Government officials for violation of federal criminal laws."  Enacted originally for a period of five years, the statutory authority was renewed several times thereafter, ultimately terminating in 1999.

16.     An independent counsel was required by Title VI to "transfer to the Archivist of the United States all records which ha[d] been created or received" by the independent counsel's office upon termination of that office.  28 U.S.C. § 594(k)(1).  Access to records transferred to the Archivist under Title VI was to be "governed by [FOIA]," except in the case of certain records provided to an independent counsel by a committee of Congress.  *Id.* § 594(k)(3)(A).

17.     Before transferring its records to the Archivist, an independent counsel was required by Title VI to "clearly identify" which of the records was "subject to Rule 6(e) of the Federal Rules of Criminal Procedure as grand jury materials."  28 U.S.C. § 594(k)(1).  "Rule 6(e) provides, in pertinent part, that the parties and witnesses to a grand jury proceeding may not 'disclose a matter occurring before the grand jury.'"  *See* Rule 6(e)(2)(B)).

---

[4] *See* http://www.archives.gov/publications/general-info-leaflets/1-about-archives.html.

[5] *See* http://www.archives.gov/research/investigations/special-prosecutors-indept-counsels.html.

**Records of Independent Counsel Kenneth Starr**

18.     In August 1994, Kenneth W. Starr was named the independent counsel to lead the investigation into the so-called Whitewater Affair. In 1999, Independent Counsel (IC) Starr resigned. He was replaced by Robert W. Ray who resigned in March 2002. The Whitewater investigation was then left for Ray's deputy to wrap up. The office officially ended operations in 2004,[6] and the records were transferred to NARA under Title VI in connection with the cessation of operations.

19.     As a result, the records of Former IC Starr and his successors are now part of NARA's holdings ("IC Starr records"). The IC Starr records, which consist of approximately 3149 cubic feet of records, have been in NARA's custody since March 2004. A finding aid reference to the Starr records has been available to the public, in redacted form, since approximately June 2015 ("Index").[7] The Index consists of two manifests – a Little Rock Office File Manifest and a District of Columbia Office File Manifest – that together list over 3300 boxes of material, with specific box numbers, as well as many thousands of folder titles noted in the "Box Contents" field.

**Search Conducted in Response to Judicial Watch's FOIA Request**

20.     Both boxes identified by plaintiff in its request, Boxes 2250 and 2256, have the same name, "Hickman Ewing Attorney Work Product." The boxes also have the same subject heading, "HRC [Hillary Rodham Clinton]." Each box, on its face, has a note indicating that the contents include material subject to Rule 6(e) of the Federal Rules of Criminal Procedure.

---

[6]  CNN.com/Inside Politics, *Whitewater Independent Counsel Robert Ray Resigns* (Mar. 12, 2002), http://edition.cnn.com/2002/ALLPOLITICS/03/12/indy.counsel.resigns/index.html (accessed Nov. 16, 2015); UPI News Track, *Whitewater Counsel Closes Doors* (Mar. 23, 2004).

[7]  By letter dated June 11, 2014, plaintiff Judicial Watch filed a FOIA request with NARA seeking access to the Index. NARA released the Index to Judicial Watch on May 4, 2015.

Within Box 2250 is a folder labeled "Draft Indictment," and within Box 2256 is a folder labeled "Hillary Rodham Clinton/Webster L. Hubbell Draft Indictment."

21.     My staff also searched the "Box Contents" and "Subject" fields of the Index to identify any other folders that might contain "Indictment" and "Hillary Rodham Clinton" or "Hillary Clinton" or "HRC." Other than the folder in box 2256, we did not locate any other responsive folders.

22.     At the time NARA responded to the FOIA request, all the material in the "Draft Indictment" folder in Box 2250, and the material in the "Hillary Rodham Clinton/Webster Hubell Draft Indictment" folder in Box 2256, were considered responsive. For the purposes of the instant lawsuit, and in accordance with the specific wording of the FOIA request for "[a]ll versions of indictments against Hillary Rodham Clinton," only draft indictments are considered responsive.

23.     Each of the responsive documents is a draft and is either clearly marked as such on the draft or on an accompanying cover memo, or is an obviously incomplete draft. Some of these drafts contain marginalia or annotations, Doc. Nos. 6, 10, 15, 17, 19; some are identical duplicates of each other, Doc. Nos. 1 – 4, 7 – 9, 12 - 13; some are non-identical duplicates, Doc. Nos. 5 – 6; some are accompanied by cover memos, Doc. Nos. 1 – 4, 5, 6, 10, 16; some are accompanied by handwritten notes on separate pieces of paper, Doc. No. 14; and some are accompanied by cover fax sheets, Doc. Nos. 5, 6. One draft consists merely of "[s]craps of a draft indictment," Doc. No. 11. The responsive documents are described in further detail in the attached index. *See* **Exhibit A**.

**FOIA Exemptions Applicable to the Responsive Documents**

*Exemption 3*

24.     FOIA Exemption 3, 5 U.S.C. § 552(b)(3), exempts from disclosure information

which is:

> specifically exempted from disclosure by statute . . . provided that such
> statute (A) requires that the matters be withheld from the public in such a
> manner as to leave no discretion on the issue, or (B) establishes particular
> criteria for withholding or refers to particular types of matters to be
> withheld.

One commonly recognized (b)(3) statute is Rule 6(e) of the Federal Rules of Criminal Procedure,

which prohibits the disclosure of matters occurring before a Grand Jury.  My office routinely

screens all responsive records for (b)(3) matters, including records that would reveal the

workings of a grand jury

25.     All the responsive documents are directly related to the Independent Counsel's

consideration of presenting an indictment to a grand jury.  The material collectively reflects

names and identifying information of individuals subpoenaed – or intended to be subpoenaed –

to testify before the grand jury, as well as information identifying specific records subpoenaed

during the grand jury process.  They reflect and quote grand jury testimony, and reveal the inner

workings and direction of the grand jury.  Disclosure would violate the secrecy of the grand jury

proceedings by disclosing the inner workings of the federal grand jury that was tasked with

considering these matters.  Similarly, the consideration of possible witnesses before the Grand

Jury, and internal memoranda and notes about the strategy and considerations regarding possible

indictments reveal the direction of the grand jury investigation.  Accordingly, all the documents

have been properly withheld in full pursuant to Exemption (b)(3).  *See* **Exhibit A**.

### *Exemption 7 Threshold*

26.     Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption. *See* 5 U.S.C. § 552(b)(7).  In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy.

27.     Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  The records at issue in this case were compiled for criminal law enforcement purposes during the course of the Independent Counsel's performance of its statutorily-imposed law enforcement mission: to investigate and, if appropriate, prosecute certain high-ranking Government officials for violation of federal criminal laws.  Given the function of an Independent Counsel and the nature of the particular documents at issue, there is little doubt that these materials were compiled for a law enforcement purpose.  Since the records clearly meet the Exemption 7 threshold, the remaining inquiry for Exemption 7 purposes is whether their disclosure would invade personal privacy.

### *Exemptions (b)(6) and (b)(7)(C)*
### *Clearly Unwarranted and Unwarranted Invasion of Personal Privacy*

28.     5 U.S.C. § 552 (b)(6) exempts from disclosure:

> personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.

29.     5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.

30.     Exemption 6 of the FOIA protects from mandatory disclosure personnel and medical files records when disclosure would constitute a clearly unwarranted invasion of personal privacy. For purposes of this case, NARA is asserting Exemption 6 in conjunction with Exemption 7(C) to protect the responsive documents at issue here. Because the analysis and balancing required by exemptions 6 and 7 is sufficiently similar to warrant a consolidated discussion, both exemptions are discussed directly below.

31.     The balancing test for Exemption 6 is whether disclosure "would constitute a clearly unwarranted invasion of personal privacy," whereas the test for Exemption 7(C) is the lower standard of whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Nevertheless, under the analysis of both exemptions, the privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

32.     When withholding information pursuant to these privacy exemptions, an agency is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, information is examined to determine the nature and strength of the privacy interest of every individual whose names and/or identifying information appears in the documents at issue. In making this analysis, the public interest in disclosure of this information is determined by assessing whether the information in question would shed light on the Independent Counsel's statutorily-imposed law enforcement mission to investigate and, if appropriate, prosecute individuals for violation of federal criminal laws. In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest. The only recognized public interest is that which sheds light on the operations and activities of the Independent Counsel. In asserting Exemptions

6 and 7(C), we have determined that the individuals' privacy interests, and in particular, the interests of Hillary Rodham Clinton, are not outweighed by any public interest in disclosure.

33.     With respect to the potential invasion of personal privacy, all individuals are entitled to a presumption of innocence. When, in the context of a criminal investigation, an Independent Counsel determines not to bring an indictment, the subject of the investigation has a significant privacy interest in not being associated with any underlying criminal activity. NARA's policy is not to release records from investigations if the records clearly identify people who, although they may have been investigated, never faced criminal charges.

34.     In this case, all the responsive documents relate to the Independent Counsel's consideration of whether to proceed with an indictment of Hillary Rodham Clinton as well as other individuals. The documents reflect numerous drafts and internal discussions as to how to they might proceed; ultimately, however, an indictment against Mrs. Clinton was never issued. Despite the role that Mrs. Clinton occupied as the First Lady during President Clinton's administration, Mrs. Clinton maintains a strong privacy interest in not having information about her from the files of the Independent Counsel disclosed.   As an uncharged person Hillary Rodham Clinton retains a significant interest in her personal privacy despite any status as a public figure.

35.     In its administrative appeal, plaintiff argued that these "privacy concerns are overwhelmed by the public interest in such records," and that the "public interest in records considering possible unlawful activity on [Hillary Rodham Clinton's] part far outweighs the privacy interest of (b)(7)(C)." While there may be a scintilla of public interest in these documents since Mrs. Clinton is presently a Democratic presidential candidate, that fact alone is not a cognizable public interest under FOIA, as disclosure of the draft indictments would not

shed light on what the government is up to. Moreover, the fact remains that the responsive records were compiled for law enforcement purposes and no charges were brought. The release of the responsive records could reasonably be expected to constitute a clearly unwarranted and an unwarranted invasion of personal privacy, while revealing little or nothing about the workings of the government. As a result, FOIA Exemptions 6 and 7(C) are fully applicable to the documents at issue here.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through F are true and correct copies.

Executed this 1st day of February, 2016.

MARTHA WAGNER MURPHY
Chief, Special Access and FOIA Branch
Research Services Division
National Archives and Records Administration
College Park, Maryland

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 15-CV-1740 (RBW) |
| | ) | |
| NATIONAL ARCHIVES AND | ) | |
| RECORDS ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

# EXHIBIT A

## RG 449, Records of Independent Counsel Kenneth Starr/Robert Ray/Julie Thomas

| Document # | Description of Document | Total # of Pages | Applicable FOIA Exemptions | Withheld in Full/ Released in Part/ Released in Full |
|---|---|---|---|---|
| 1 - 4 | One-page memorandum with attached draft indictment; (Four identical copies) | 92 (23 pages each) | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 5 | One-page memorandum and one-page cover fax sheet with attached draft indictment) | 24 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 6 | One-page memorandum and one-page cover fax sheet with attached draft indictment (with marginalia) | 24 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 7-9 | Draft indictment;  (Three identical copies) | 45 pages (15 pages each) | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 10 | One-page memorandum with attached draft indictment; contains some annotations on indictment and handwritten notes on the back of last page of draft indictment | 23 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 11 | Scraps of a draft indictment with no caption | 4 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 12-13 | Draft indictment without a caption, listing overt acts.  (Two identical copies) | 6 pages (3 pages each) | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 14 | Draft indictment with two pages of handwritten notes | 24 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 15 | Draft indictment; contains some annotations | 22 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 16 | One-page memorandum with attached draft indictment | 37 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 17 | Draft indictment; contains some annotations | 37 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 18 | Draft indictment | 36 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 19 | Draft indictment; contains some annotations | 40 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |
| 20 | Draft indictment | 37 pages | (b)(3), (b)(6), (b)(7)(C) | Withheld in Full |

**TOTAL = 451 pages**

**Exhibit A** to Declaration of Martha Wagner Murphy,
*Judicial Watch, Inc. v. NARA, Inc. v. NARA,* Civ. A. No. 15-CV-1740 (RBW)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,                )
                                     )
    Plaintiff,                       )
                                     )
        v.                           )        Civ. A. No. 15-CV-1740 (RBW)
                                     )
NATIONAL ARCHIVES AND                )
RECORDS ADMINISTRATION,              )
                                     )
    Defendant.                       )
                                     )

# EXHIBIT B



**Judicial Watch®**

*Because no one is above the law!*

March 9, 2015

<u>**VIA CERTIFIED MAIL & EMAIL**</u>

National Archives and Records Administration
Special Access and FOIA Staff (NWCTF)
8601 Adelphi Road, Room 6350
College Park, MD 20740

<u>**Re: Freedom of Information Act Request**</u>

Dear Freedom of Information Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Judicial Watch, Inc. hereby requests that the National Archives and Records Administration produce the following within twenty (20) business days:

**All versions of indictments against Hillary Rodham Clinton, including, but not limited to, Versions 1, 2, and 3 in box 2250 of the Hickman Ewing Attorney Files, the "HRC/___ Draft Indictment" in box 2256 of the Hickman Ewing Attorney Files, as well as any and all versions written by Deputy Independent Counsel Hickman Ewing, Jr. prior to September of 1996.**

The records in question are located in the material submitted to the National Archives and Records Administration by the Office of Independent Counsel In Re: Madison Guaranty Savings & Loan Association, also known as "the records of IC Starr."

We call your attention to President Obama's January 21, 2009 Memorandum concerning the Freedom of Information Act, in which he states:

> All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA…The presumption of disclosure should be applied to all decisions involving

FOIA.[1]

The memo further provides that "The Freedom of Information Act should be administered with a clear presumption: In the case of doubt, openness prevails."

Nevertheless, if any responsive record or portion thereof is claimed to be exempt from production under FOIA, please provide sufficient identifying information with respect to each allegedly exempt record or portion thereof to allow us to assess the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). In addition, any reasonably segregable portion of a responsive record must be provided, after redaction of any allegedly exempt material. 5 U.S.C. § 552(b).

For purposes of this request, the term "record" shall mean: (1) any written, printed, or typed material of any kind, including without limitation all correspondence, memoranda, notes, messages, letters, cards, facsimiles, papers, forms, telephone messages, diaries, schedules, calendars, chronological data, minutes, books, reports, charts, lists, ledgers, invoices, worksheets, receipts, returns, computer printouts, printed matter, prospectuses, statements, checks, statistics, surveys, affidavits, contracts, agreements, transcripts, magazine or newspaper articles, or press releases; (2) any electronically, magnetically, or mechanically stored material of any kind, including without limitation all electronic mail or e-mail; (3) any audio, aural, visual, or video records, recordings, or representations of any kind; (4) any graphic materials and data compilations from which information can be obtained; and (5) any materials using other means of preserving thought or expression.

Judicial Watch also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. §§ 552(a)(4)(A)(ii)(II) and (a)(4)(A)(iii). Judicial Watch is entitled to a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it is a member of the news media. *Cf. National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)(defining news media within FOIA context). Judicial Watch has also been recognized as a member of the news media in other FOIA litigation. *See, e.g., Judicial Watch, Inc. v. U.S. Department of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000); and, *Judicial Watch, Inc. v. Department of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006). Judicial Watch regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public. It intends to do likewise with the records it receives in response to this request.

Judicial Watch also is entitled to a complete waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:

---

[1] Freedom of Information Act. Pres. Mem. of January 21, 2009, 74 Fed. Reg. 4683.

> shall be furnished without any charge or at a charge
> reduced below the fees established under clause (ii) if
> disclosure of the information is in the public interest
> because it is likely to contribute significantly to public
> understanding of the operations or activities of government
> and is not primarily in the commercial interest of the
> requester.

5 U.S.C. § 552(a)(4)(A)(iii).

In addition, if records are not produced within twenty (20) business days, Judicial Watch is entitled to a complete waiver of search and duplication fees under Section 6(b) of the OPEN Government Act of 2007, which amended FOIA at 5 U.S.C. § (a)(4)(A)(viii).

Judicial Watch is a 501(c)(3), not-for-profit, educational organization, and, by definition, it has no commercial purpose. Judicial Watch exists to educate the public about the operations and activities of government, as well as to increase public understanding about the importance of ethics and the rule of law in government. The particular records requested herein are sought as part of Judicial Watch's ongoing efforts to document the operations and activities of the federal government and to educate the public about these operations and activities. Once Judicial Watch obtains the requested records, it intends to analyze them and disseminate the results of its analysis, as well as the records themselves, as a special written report. Judicial Watch will also educate the public via radio programs, Judicial Watch's website, and/or newsletter, among other outlets. It also will make the records available to other members of the media or researchers upon request. Judicial Watch has a proven ability to disseminate information obtained through FOIA to the public, as demonstrated by its long-standing and continuing public outreach efforts.

Given these circumstances, Judicial Watch is entitled to a public interest fee waiver of both search costs and duplication costs. Nonetheless, in the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch is willing to pay up to $350.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

In an effort to facilitate record production within the statutory time limit, Judicial Watch is willing to accept documents in electronic format (e.g. e-mail, .pdfs). When necessary, Judicial Watch will also accept the "rolling production" of documents.

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172 or kbailey@judicialwatch.org. We look forward to receiving the

**National Archives and Records Administration**
**March 9, 2015**
**Page 4 of 4**

requested documents and a waiver of both search and duplication costs within twenty (20) business days. Thank you for your cooperation.

Sincerely,

*Kate Bailey*

Kate Bailey
Judicial Watch

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

    Plaintiff,

           v.                      Civ. A. No. 15-CV-1740 (RBW)

NATIONAL ARCHIVES AND
RECORDS ADMINISTRATION,

    Defendant.

# EXHIBIT C

NATIONAL ARCHIVES *and* RECORDS ADMINISTRATION
8601 ADELPHI ROAD   COLLEGE PARK, MD 20740-6001
*www.archives.gov*



NATIONAL
ARCHIVES

March 19, 2015

Kate Bailey
Judicial Watch
425 Third Street, SW, Suite 800
Washington, DC 20024

Dear Ms. Bailey,

This is in response to your Freedom of Information Act request of March 17, 2015 for
records in the custody of the National Archives and Records Administration. Your request
was received in this office on March 17, 2015 and assigned FOIA case number 46068.
You requested Independent Counsel Kenneth Starr records related to several versions of
indictments of Hillary Clinton.

We have examined the folders from Hickman Ewing's attorney files that you requested.
From box 2250 the folder "Draft Indictment" (38 pages) is denied in full under Exemption
(b)(7)(C). From box 2256 the folder "Hillary Rodham Clinton/Webster L. Hubbell Draft
Indicment" (approximately 200 pages) is denied in full under Exemption (b)(7)(C).

You requested a waiver for reproduction fees ordinarily charged to researchers, however,
records transferred to the custody of the National Archives are exempted from the fee and
fee waiver provisions of the Freedom of Information Act because there was a fee
schedule in place prior to enactment of the FOIA. The applicable section states that
"nothing in this subparagraph shall supersede fees chargeable under a statute specifically
providing for setting the level of fees for particular types of records" (5 U.S.C. 552
(a)(4)(A)(vi)). The relevant fee statute authorizes the National Archives "to charge a fee
for making or authenticating copies or reproductions of materials transferred to the
Archivist's custody." (44 U.S.C. 2116(c)).

The inability to grant the requested fee waiver does not constitute a denial under the
terms of the Freedom of Information Act. However, if you consider this response to be a
denial of your request, or if you wish to appeal the document denials, you may appeal my
decision within 60 calendar days from the date of this letter. Appeals must be submitted in
writing and addressed to the Deputy Archivist of the United States, National Archives and
Records Administration, 8601 Adelphi Road, Room 4200, College Park, MD 20740. In
your letter, please cite your case number and clearly label both the letter and envelope as
a FOIA Appeal. As an alternative, you may e-mail your appeal to foia@nara.gov. If you
choose this option, please use the words "FOIA appeal" in the subject line and also cite
your case number.

This concludes the processing of your request. If you have any question about the way we handled your request, or about our FOIA regulations or procedures, please contact David Paynter at david.paynter@nara.gov or (301) 837-2041.

Sincerely,

MARTHA WAGNER MURPHY
Chief
Special Access and FOIA Staff

NATIONAL ARCHIVES *and*
RECORDS ADMINISTRATION

8601 ADELPHI ROAD
COLLEGE PARK, MD 20740-6001
*www.archives.gov*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,                    )
                                         )
   Plaintiff,                            )
                                         )
           v.                       )        Civ. A. No. 15-CV-1740 (RBW)
                                         )
NATIONAL ARCHIVES AND                    )
RECORDS ADMINISTRATION,                  )
                                         )
   Defendant.                            )
_____)

# EXHIBIT D



NATIONAL
ARCHIVES

October 16, 2015

**VIA FIRST CLASS MAIL**
Ms. Kate Bailey
Judicial Watch
425 Third Street, SW, Suite 800
Washington, DC 20024

## Re: NARA Case No. RD 46086; NARA Appeal No. NGC15-071A

Dear Ms. Bailey:

This is to advise you that your administrative appeal, dated May 14, 2015, from the initial decision of the Special Access and FOIA Staff, was received by this office on behalf of the Deputy Archivist of the United States on May 14, 2015. Your appeal has been assigned number NGC15-071A. We apologize for our delay in acknowledging your administrative appeal.

The Deputy Archivist of the United States has the responsibility to adjudicate such appeals. We regret any delay in responding to your appeal. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. As stated above, your appeal has been assigned number NGC15-071A. Please provide this number in any future correspondence to this office regarding this matter. Please note, if you provide an e-mail address or another electronic means of communication with your appeal, this office may respond to you electronically even if you submitted your appeal via regular U.S. Postal Service.

We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal, you may contact me at the number and/or email below. If you have submitted your appeal through the *FOIAonline* electronic portal, you may also obtain an update on the status of your appeal by logging into your *FOIAonline* account.

Sincerely,

JOSEPH A. SCANLON
FOIA Officer
Office of General Counsel
(301) 837-0583
joseph.scanlon@nara.gov

NATIONAL ARCHIVES *and*
RECORDS ADMINISTRATION

8601 ADELPHI ROAD
COLLEGE PARK, MD 20740-6001
*www.archives.gov*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,                        )
                                             )
    Plaintiff,                               )
                                             )
        v.                                   )      Civ. A. No. 15-CV-1740 (RBW)
                                             )
NATIONAL ARCHIVES AND                        )
RECORDS ADMINISTRATION,                      )
                                             )
    Defendant.                               )
                                             )

# EXHIBIT E



NATIONAL
ARCHIVES

December 4, 2015

Ms. Kate Bailey
Judicial Watch
425 Third Street, SW, Suite 800
Washington, DC 20024

Re: Freedom of Information Act Appeal NGC15-071A

Dear Ms. Bailey:

This is in response to your Freedom of Information Act (FOIA) letter in which you appeal the initial decision of the Special Access and FOIA Staff regarding your FOIA request, RD 46068, which asked for access to accessioned records within the holdings of the National Archives and Records Administration (NARA).

I have been informed that you filed a lawsuit in the United States District Court for the District of Columbia concerning NARA's initial decision in this matter. As a result, and in accordance with 36 C.F.R. § 1250.74(a)(2), I am closing your appeal file now that your request is the subject of a FOIA lawsuit.

Sincerely

DEBRA STEIDEL WALL
Deputy Archivist of the United States

NATIONAL ARCHIVES and
RECORDS ADMINISTRATION

8601 ADELPHI ROAD
COLLEGE PARK, MD 20740-6001
www.archives.gov