**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                                                    |     |                            |
| -------------------------------------------------- | --- | -------------------------- |
|                                                    | )   |                            |
| **JUDICIAL WATCH, INC.**                           | )   |                            |
|                                                    | )   |                            |
| **Plaintiff,**                                     | )   |                            |
|                                                    | )   |                            |
| **v.**                                             | )   | **No. 1:15-cv-01740-RBW**  |
|                                                    | )   |                            |
| **NATIONAL ARCHIVES AND**                          | )   |                            |
| **RECORDS ADMINISTRATION,**                        | )   |                            |
|                                                    | )   |                            |
| **Defendant.**                                     | )   |                            |
|                                                    | )   |                            |

**DEFENDANT'S COMBINED REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO
<u>PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      THE DRAFTS OF THE INDICTMENT ARE PROTECTED BY FED. R. CRIM. P.
        6(e) ...........................................................................................................................2

        A.      NARA IS NOT PROHIBITED FROM WITHHOLDING INFORMATION PROTECTED
                BY RULE 6(e) .................................................................................................2

        B.      PRIOR DISCLOSURES DO NOT RENDER THE DRAFTS OF THE INDICTMENT
                INELIGIBLE FOR THE PROTECTION OF RULE 6(e) .......................................7

        C.      THE INFORMATION CONTAINED IN THE DRAFTS OF THE INDICTMENT COMES WITHIN
                THE PURVIEW OF RULE 6(e) .........................................................................9

II.     THE DRAFTS OF THE INDICTMENT ARE PROTECTED BY FOIA EXEMPTION
        7(C) .........................................................................................................................11

        A.      MRS. CLINTON HAS A PRIVACY INTEREST IN THE NONDISCLOSURE OF THE
                DRAFTS .........................................................................................................11

        B.      PLAINTIFF HAS NOT SHOWN THAT ANY PUBLIC INTEREST IN THE DISCLOSURE OF
                THE DRAFTS OUTWEIGHS THE INTEREST OF MRS. CLINTON IN THEIR
                NONDISCLOSURE ..........................................................................................14

III.    THE DRAFTS OF THE INDICTMENT MAY BE WITHHELD IN THEIR
        ENTIRETY ...............................................................................................................17

CONCLUSION ....................................................................................................................17

## TABLE OF CASES

Page

*A Just Cause v. United States*, 45 F. Supp. 3d 1258 (D. Colo. 2014)................................................6

*ACLU v. Dep't of Def.*, 628 F.3d 612 (D.C. Cir. 2011) ....................................................7

*ACLU v. Dep't of Justice*, 750 F.3d 927 (D.C. Cir. 2014)....................................................11

*Birch v. Postal Serv.*, 803 F.2d 1206 (D.C. Cir. 1986) ....................................................3

*Boehm v. FBI*, 948 F. Supp. 2d 9 (D.D.C. 2013) ....................................................10

*Cause of Action v. NARA*, 753 F.3d 210 (D.C. Cir. 2014)....................................................4

*Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082
(D.C. Cir. 2014) ....................................................12, 15, 16

*Coleman v. Interco Inc. Divs.' Plans*, 933 F.2d 550 (7th Cir. 1991)....................................................14

*Davis v. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992)....................................................7

*Dep't of State v. Ray*, 502 U.S. 164 (1991)....................................................15

*Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926 (D.C. Cir. 2012)....................................................7, 17

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, 2016 WL 447426 (D.D.C. Feb. 4, 2016)....................................................4

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ....................................................5, 6

*FTC v. Grolier, Inc.*, 462 U.S. 19 (1983)....................................................4

*Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856
(D.C. Cir. 1981) ....................................................2, 3, 4, 13

*Lopez v. Dep't of Justice*, 393 F.3d 1345 (D.C. Cir. 2005) ....................................................9

*Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1977)....................................................17

*Melong v. Micronesian Claims Comm'n*, 569 F.2d 630 (D.C. Cir. 1977)....................................................5, 6

*Multi Ag Media v. Dep't of Agric.*, 515 F.3d 1224 (D.C. Cir. 2008)....................................................15

*Murphy v. Exec. Office of U.S. Att'ys*, 789 F.3d 204 (D.C. Cir. 2015)....................................................9

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ............................................3, 14

*Nat'l Ass'n of Homebuilders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002) ..........................................15

*News-Press v. Dep't of Homeland Sec*, 489 F.3d 1173 (11th Cir. 2007) ......................................15

*People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535 (D.C. Cir. 2014) ..............................................................................................................13, 14, 16

*Prison Legal News v. Exec. Office for U.S. Att'ys*, 628 F.3d 1243 (10th Cir. 2011)......................2

*Sinsheimer v. Dep't of Homeland Sec.*, 437 F. Supp. 2d 50 (D.D.C. 2006) ..................................13

*Williams & Connolly v. SEC*, 662 F.3d 1240 (D.C. Cir. 2011) ........................................................7

*Woods v. Ginocchio*, 180 F.2d 484 (9th Cir. 1950) ........................................................................7

## INTRODUCTION

Plaintiff, Judicial Watch, seeks an order  under 5 U.S.C. § 552(a)(4)(B), a provision of the Freedom of Information Act (FOIA), directing defendant, the National Archives and Records Administration (NARA), to produce drafts of a potential indictment pertaining to Hillary Rodham Clinton, despite the undisputed fact that no indictment ever issued.[1]  The drafts were prepared by the Office of Independent Counsel (OIC) established to conduct "the investigation into the so-called Whitewater Affair (Whitewater OIC).[2]

NARA has moved for summary judgment.  ECF No. 10.  Plaintiff has responded by filing a cross motion for summary judgment.  ECF No. 13.  Plaintiff states in its supporting memorandum that it does not dispute "the scope of [NARA's] search" or that that the drafts of the indictment "were 'compiled for law enforcement purposes.'"  Pl. Mem. P. & A. Opp'n Def. Mot. Summ. J. & Supp. Pl. Cross-Mot. Summ. J. (Pl. Mem.), ECF Nos. 12, at 1, 19 (quoting 5 U.S.C. § 552(b)(7)).[3]  Because plaintiff does not dispute these issues, the sole issues that remain for adjudication in this action are whether the drafts of the indictment are protected by Fed. R. Crim. P. 6(e), and thus are protected by FOIA Exemption 3, 5 U.S.C. § 552(b)(3); whether the drafts of the indictment are protected by FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C); and whether the drafts of the indictment are suitable for withholding in their entirety.

---

[1] Plaintiff refers to the drafts of the indictment as "draft indictments," *e.g.,* Pl. Mem. P. & A. Opp'n Def. Mot. Summ. J. & Supp. Pl. Mot. Summ. J., ECF No. 12, at 1, 19, 26, but the drafts are drafts of but one indictment.

[2] Certain of the drafts of the indictment are accompanied by fax cover pages, notes or memoranda.  Decl. of Martha Wagner Murphy (Feb. 1, 2016), ECF No. 10-3, Ex. A.  These documents played no role in the decision of NARA to withhold the drafts of the indictment.  Second Decl. of Martha Wagner Murphy (Apr. 18, 2016) (Ex. A hereto) ¶ 6.  They were withheld by NARA because they were physically attached to the drafts and thus an integral part of them. *Id.*

[3] Plaintiff's Memorandum is filed twice, as ECF No. 12 and, with a different cover page, as the portion of ECF No. 13 following plaintiff's cross motion for summary judgment.

Notwithstanding the efforts of plaintiff to show otherwise, Pl. Mem. at 9-25, NARA is entitled to affirmative rulings on all of these issues.  NARA's motion for summary judgment should therefore be granted and plaintiff's cross motion for summary judgment should be denied.[4]

## ARGUMENT

## I.   THE DRAFTS OF THE INDICTMENT ARE PROTECTED BY FED. R. CRIM. P. 6(e).

Plaintiff argues that the drafts of the indictment are not protected by Rule 6(e), and thus are not protected by Exemption 3, because NARA is prohibited from withholding information protected by Rule 6(e); because prior disclosures render the drafts ineligible for the protection of Rule 6(e); and because the information contained in the drafts does not come within the purview of Rule 6(e).  Each of these arguments is addressed below.  None has merit.

### A.   NARA IS NOT PROHIBITED FROM WITHHOLDING INFORMATION PROTECTED BY RULE 6(e).

In *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856 (D.C. Cir. 1981), the predecessor of NARA was held to have acted appropriately by withholding information protected by Rule 6(e) from records transferred to it by the Watergate Special Prosecution Force because disclosure of the records "would [have] reveal[ed] matters occurring before the grand jury."  656 F.2d at 870.  Plaintiff makes two arguments to try to show that NARA is prohibited from withholding information protected by Rule 6(e), notwithstanding *Fund for Constitutional Government*.  Neither argument is persuasive.

---

[4] NARA relies on FOIA Exemption 6, 5 U.S.C. 552(b)(6), as well as on FOIA Exemption 7(C) as a basis for withholding the drafts of the indictment.  Mem. Supp. Def. Mot. Summ. J., ECF No. 10-1, at 1, 14-15.  "Because there is no dispute the records at issue here constitute law enforcement records, and because Exemption 7(C) is broader than Exemption 6, an Exemption 6 analysis is . . . unnecessary."  *Prison Legal News v. Exec. Office for U.S. Att'ys*, 628 F.3d 1243, 1248 n.4 (10th Cir. 2011).

First, plaintiff argues that *Fund for Constitutional Government* "has no bearing on this case" because the FOIA request in *Fund for Constitutional Government* was submitted to the Watergate Special Prosecution Force rather than to the predecessor of NARA.  Pl. Mem. at 10. This argument is without merit because the exemptions to FOIA "enabl[e] agencies to refuse requests for public access to specified types of information," *Birch v. Postal Serv.*, 803 F.2d 1206, 1209 (D.C. Cir. 1986), and because the exemptions thus permit the withholding of information irrespective of the agency from which the information is requested.  NARA was therefore permitted in *NARA v. Favish*, 541 U.S. 157 (2004), to rely on FOIA Exemption 7(C) to withhold records transferred to it by the Whitewater OIC even though the request for the records had been submitted to the Whitewater OIC and not to NARA.  541 U.S. at 161, 164.  *Fund for Constitutional Government* thus controls this case.

Second, plaintiff argues that NARA is prohibited by Rule 6(e)(2)(A) and (B) from withholding information protected by Rule 6(e).  Rule 6(e)(2)(B) prohibits "a grand juror," "an interpreter," "a court reporter," "an operator of a recording device," "a person who transcribes recorded testimony," "an attorney for the government," or "a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii)" from disclosing "a matter occurring before the grand jury" unless the disclosure is permitted by another rule.[5]  Rule 6(e)(2)(A) provides that "[n]o obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)." Reading Rule 6(e)(2)(A) and (B) together, plaintiff argues that NARA is prohibited from

---

[5] Subject to certain exceptions, Rule 6(e)(3)(A)(ii) permits the "[d]isclosure of a grand-jury matter" to "any government personnel . . . that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law" and Rule 6(e)(3)(A)(iii) permits the "[d]isclosure of a grand-jury matter" to "a person authorized by 18 U.S.C. § 3322," i.e., "an attorney for the government and banking regulators for enforcing civil forfeiture and civil banking laws."  Rule 6, Adv. Comm. Notes, 2002 Amdts.

withholding information protected by Rule 6(e) because NARA "does not fall anywhere within [the] seven categories of persons" listed in Rule 6(e)(2)(B).  Pl. Mem. at 9.

 Plaintiff's argument is without merit.  Under plaintiff's reading of FOIA, no agency except the Department of Justice can withhold grand jury information under Exemption 3 because the holder of the information will never be the "attorney for the government" as specified in Rule 6(e)(2)(B).  Such a reading makes little sense, and is in direct contravention of this Circuit's holding in *Fund for Constitutional Government*.  NARA holds other agencies' records in its archival capacity, as a custodian.  *See Cause of Action v. NARA*, 753 F.3d 210, 213-14 (D.C. Cir. 2014) ("The National Archives serves as a repository for the federal government, including Congress and legislative branch"); Second Decl. of Martha Wagner Murphy (Apr. 18, 2016) (2d Murphy Decl.) (Ex. A hereto) ¶ 8 (discussing NARA's holdings of Department of Justice records). [6]  NARA's possession of Department of Justice grand jury records does not, through NARA's possession, negate their character as grand jury records subject to Rule 6(e) secrecy.  Were that the case, the Department of Justice presumably could not send their records to NARA in the first instance without itself violating Rule 6(e).  By asserting Exemption 3, NARA is invoking a statutory exemption under FOIA, not asserting Rule 6(e) for itself.  *Cf. FTC v. Grolier, Inc.*, 462 U.S. 19, 26-27 (1983) (distinguishing the invocation of a privilege from the assertion of FOIA Exemption 5).  In other words, NARA is fulfilling its obligation to withhold information that is protected under a separate statutory mandate.  The agency holding the information is irrelevant if the information otherwise falls within the ambit of statutory protection.

---

[6] The submission of "additional declarations along with [an] opposition to [a] cross motion for summary judgment" is an established practice in actions under FOIA.  *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 2016 WL 447426, at *3 (D.D.C. Feb. 4, 2016).

Nevertheless, even were one to ignore FOIA, and look only to the statutory language of

Rule 6(e), plaintiff's argument would ring particularly hollow in this particular case, where the

Independent Counsel statute directed a transfer of records to NARA while protecting grand jury

records subject to Rule 6(e). "'[A] specific policy embodied in a later federal statute should

control [the] construction of [an earlier] statute, even though it ha[s] not been expressly

amended,'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (quoting

*Estate of Romani*, 523 U.S. 517, 530-31 (1998)), and "a construction, leading as it does to patent

absurdity, is obviously to be avoided." *Melong v. Micronesian Claims Comm'n*, 569 F.2d 630,

634 (D.C. Cir. 1977). These principles apply here. The predecessor of Rule 6(e)(2)(A) was part

of the Federal Rules of Criminal Procedure as initially adopted in 1944. The apparent purpose of

the predecessor of Rule 6(e)(2)(A) was to make it clear that Rule 6(e) "[did] not impose any

obligation of secrecy on witnesses." Rule 6, Adv. Comm. Notes, 1944 Adoption, Note to

Subdiv. (e) ¶ 2. Explaining why a need for clarification existed, the Advisory Committee said:

"The existing practice on this point varies among the districts. The seal of secrecy on witnesses

seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make

disclosure to counsel or to an associate." *Id.*

> Legislation providing as follows was enacted by Congress in 1987:
>
> Upon termination of the office of an independent counsel, that independent
> counsel shall transfer to the Archivist of the United States all records which have
> been created or received by that office. Before this transfer, the independent
> counsel shall clearly identify which of these records are subject to [R]ule 6(e) of
> the Federal Rules of Criminal Procedure . . .

Independent Counsel Reauthorization Act of 1987, Pub. L. No. 100-191, § 2, 101 Stat. 1303

(codified at 28 U.S.C. § 594(k)(1)). The intention of Congress in enacting § 594(k)(1) was that

"the Archivist apply the same rules to . . . independent counsel records as are applied to similar

sets of records in the Archivist's custody, including rules protecting . . . grand jury materials."
S. Rep. No. 100-123, at 26 (1987).  The reference to Rule 6(e) included in the text of § 594(k)(1)
makes it clear that Rule 6(e) was the "rule[] protecting . . . grand jury materials" that Congress
intended the Archivist to apply.

The Archivist is the official under whose "supervision and direction" NARA operates.
44 U.S.C. § 2102.  Rule 6(e)(2)(A) and § 594(k)(1) thus present a case in which "the scope of the
earlier statute is broad but the subsequent statute[] more specifically address[es] the topic at
hand," i.e., the protection that NARA is required to give to grand jury materials transferred to the
Archivist by an independent counsel whose office is closing.  *See Brown & Williamson*, 529 U.S.
at 143.  The "'specific policy embodied in [§ 594(k)(1)]" thus controls "[this Court's]
construction of [Rule 6(e)(2)(A)], even though [Rule 6(e)(2)(A)] ha[s] not been expressly
amended.'"  *See id.* (quoting *Romani*, 523 U.S. at 530-31).

Two "patent absurdit[ies]" would result from any construction of Rule 6(e)(2)(A) that
prohibited NARA from withholding information protected by Rule 6(e).  *See Melong*, 569 F.2d
at 634.  First, as noted above, no agency other than the Department of Justice "fall[s] anywhere
within [the] seven categories of persons" listed in Rule 6(e)(2)(B).  *See* Pl. Mem. at 9.  Yet the
ability of agencies to withhold information protected by Rule 6(e) has been established for
decades.  In *Fund for Constitutional Government*, the court held that "[Rule 6(e)'s] ban on
disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3."  656 F.2d
at 868.

Second, an independent counsel would be engaging in "busywork with no meaningful
purpose," *A Just Cause v. United States*, 45 F. Supp. 3d 1258, 1272 n.5 (D. Colo. 2014), if he or
she were to comply with § 594(k)(1) by "clearly identify[ing]" which of the records that were

6

being transferred to the Archivist were "subject to [R]ule 6(e)."  "It is elemental that equity

abhors the doing of unnecessary acts."  *Woods v. Ginocchio*, 180 F.2d 484, 487 (9th Cir. 1950).

Rule 6(e)(2)(A) cannot be construed, therefore, as prohibiting NARA from withholding

information protected by Rule 6(e).

### B.     PRIOR DISCLOSURES DO NOT RENDER THE DRAFTS OF THE INDICTMENT INELIGIBLE FOR THE PROTECTION OF RULE 6(e).

A plaintiff seeking to overcome the applicability of a FOIA exemption by "asserting a

claim of prior disclosure bears the initial burden of pointing to 'specific information in the public

domain that appears to duplicate that being withheld.'"  *Elec. Privacy Info. Ctr. (EPIC) v. NSA*,

678 F.3d 926, 933 (D.C. Cir. 2012) (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)).

"'[P]rior disclosure of similar information does not suffice; instead, the *specific* information must

already be in the public domain by official disclosure.'"  *ACLU v. Dep't of Def.*, 628 F.3d 612,

621 (D.C. Cir. 2011) (quoting *Wolf*, 473 F.3d at 478).  Orders that "impinge on executive

discretion" or "deter agencies from voluntarily honoring FOIA requests" by requiring the

disclosure of information are disfavored.  *See Williams & Connolly v. SEC*, 662 F.3d 1240, 1245

(D.C. Cir. 2011).  A requester wishing to show that information has lost its exempt status

because of its prior disclosure must therefore "point to 'specific' information identical to that

being withheld."  *Davis v. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992).

Plaintiff argues that the drafts of the indictment do not contain any information that is

protectable under Rule 6(e) "because an enormous amount of information about the independent

counsel's investigations into Mrs. Clinton's conduct as first lady, including grand jury

information, has already been published in official reports and other records."  Pl. Mem. 1.

Plaintiff bases this argument on two documents, the *Final Report of the Independent Counsel In*

*re Madison Guaranty Savings and Loan Association* (Jan. 5, 2001) (Final Rep.), portion filed as

ECF No. 12-2, and the memorandum dated April 22, 1998, from "HRC Team" to "All OIC Attorneys" captioned "Summary of Evidence [redacted] Hillary Rodham Clinton and Webb Hubbell" (Evidence Mem.), ECF Nos. 12-3 to 12-7.  *Id.* at 18.

Plaintiff's argument is without merit.  NARA received a FOIA request for the Evidence Memorandum in 2005.  2d Murphy Decl ¶ 3.  NARA responded to that request by conducting an examination of the memorandum for possible release.  *Id.*  Its examination of the memorandum included a comparison of the memorandum to the Final Report.  *Id.*  NARA understood in conducting the examination that the contents of the Evidence Memorandum might include non-grand jury material.  *Id.*

Based in part on "an analysis of the factual and stylistic presentment in both documents," NARA was able to "draw important distinctions between information in the Evidence Memorandum that had already been released to the public in the Final Report, and that information in the Evidence Memorandum that was considered grand jury information and should continue to be withheld."  2d Murphy Decl. ¶ 3.  "That approach was fully consistent with NARA's long-standing practice of taking into consideration the overall context of the material being requested and, in this example resulted in the partial release of the Evidence Memorandum with redactions for grand jury material (as well as other redactions)." [7]  *Id.*  NARA followed the same approach when it examined the drafts of the indictment for possible release. *Id.* ¶ 4.

The care that NARA took in comparing the Evidence Memorandum to the Final Report and in comparing the drafts of the indictment to both of those documents belies plaintiff's

---

[7] The redactions for grand jury material that NARA made from the Evidence Memorandum appear at pages 4-5, 15, 18, 20, 22, 35, 40-41, 45-49, 52, 55, 58-59, 63, 68-77, 79-93, 100, 104-05, 107, 110, 112-13, 115, 117-23, 128-29,139-40, 154-55,157-65, 171, 196, and 198 of the memorandum.  *See* ECF Nos. 12-3 to 12-7.

argument that any information in the drafts of the indictment that might have been protectable under Rule 6(e) has already been disclosed and thus is ineligible for protection.  That argument should therefore be rejected.

   **C.    THE INFORMATION CONTAINED IN THE DRAFTS OF THE INDICTMENT COMES WITHIN THE PURVIEW OF RULE 6(e).**

   Where, as here, information is withheld under Rule 6(e), the "relevant inquiry" is "whether disclosure of the information would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  *Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (quoting *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)).  The agency withholding the information has the "burden of demonstrating some 'nexus between disclosure and revelation of a protected aspect of the grand jury's investigation,'" *id.* at 1350 (quoting *Senate of P.R.*, 823 F.2d at 584), but "[the] agency's task is not herculean" because "[t]he justification for invoking a FOIA exemption is sufficient if it 'appears logical or plausible.'"  *Murphy v. Exec. Office for U.S. Att'ys*, 789 F.3d 204, 209 (D.C. Cir. 2015) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

   NARA has relied to date on the First Declaration of Martha Wagner Murphy (Feb. 1, 2016) (1st Murphy Decl.), ECF No. 10-3, to meet its burden of "demonstrating some 'nexus between disclosure [of the drafts of the indictment] and revelation of a protected aspect of the grand jury's investigation.'"  *See Lopez*, 393 F.3d at 150 (quoting *Senate of P.R.*, 823 F.2d at 584).  Ms. Murphy is Chief of NARA's Special Access and FOIA Branch, 1st Murphy Decl. ¶ 1, and thus is well-qualified to explain the rationales employed by NARA for withholding information.  Ms. Murphy states in her declaration that the drafts of the indictment reflect

9

"names and identifying information of individuals subpoenaed . . . as well as information identifying specific records subpoenaed." *Id.* ¶ 25. She also states that the drafts "reflect and quote grand jury testimony." *Id.* She therefore concludes that disclosure of the drafts "would violate the secrecy of the grand jury proceedings by disclosing the inner workings of the grand jury that was tasked with considering these matters." *Id.*

Plaintiff argues that Ms. Murphy "paints with far too broad of a brush" for her declaration to be persuasive. Pl. Mem. at 14. Plaintiff is mistaken; Ms. Murphy's declaration makes it "'appear[] [both] logical [and] plausible'" that the drafts of the indictment are protected by Rule 6(e). *See Murphy*, 789 F.3d at 209 (quoting *Larson*, 565 F.3d at 862). To eliminate any doubt, however, Ms. Murphy has executed a second declaration in which she provides the following additional information:

> Any indictment is a written accusation of a crime and is crafted for the specific purpose of persuading a grand jury to formally charge one or more individuals. These draft indictments reflect the net result of all of the evidence gathered throughout the grand jury investigatory process; they represent a compilation and distillation of all of the evidence gathered and presented before the grand jury up until the time the draft indictments were prepared  . . . .
>
> If we are able to ascertain that an indictment has been issued by a grand jury, our practice is to release both the issued indictment as well as any of the underlying drafts, or at least those portions of drafts that are relevant to any charges that are ultimately brought. Our practice is also to release drafts, or portions thereof, if they contain information obtained separate and apart from the grand jury process, such as a separate prosecutorial investigation. Neither of those scenarios exists in this case for at least two reasons. First, as is evident in the Final Report, the Whitewater grand jury was never presented with an indictment of Secretary Clinton. Second, none of the drafts that we reviewed contained information that we determined had been obtained separate from the grand jury process.

Second Murphy Decl. ¶¶ 5-6.

The Executive Office for U.S. Attorneys was held in *Boehm v. FBI*, 948 F. Supp. 2d 9 (D.D.C. 2013), to have acted appropriately by withholding "a draft of a grand jury indictment"

pursuant to Rule 6(e) because disclosure of the draft "would [have] tend[ed] to reveal the secret workings of the grand jury."  948 F. Supp. at 27.  Plaintiff criticizes *Boehm* because it does not address the arguments that plaintiff makes in this case.  Pl. Mem. at 14 n.7.  Plaintiff does not dispute, however, that the Executive Office for U.S. Attorneys was permitted to do in *Boehm* exactly what NARA is doing here: withhold drafts of an indictment pursuant to Rule 6(e).  NARA's motion for summary judgment should therefore be granted.

## II.     THE DRAFTS OF THE INDICTMENT ARE PROTECTED BY FOIA EXEMPTION 7(C).

Where, as here, information is withheld under Exemption 7(C), the court must "balance [any] privacy interest [that may exist] against the public interest in disclosure."  *Favish*, 541 U.S. at 171.  Plaintiff argues that the drafts of the indictment are not protectable under Exemption 7(C) because Mrs. Clinton does not have a privacy interest in the nondisclosure of the drafts and because the alleged public interest in the disclosure of the drafts outweighs any privacy interest in their nondisclosure that Mrs. Clinton may have.  Plaintiff is mistaken on both counts.

### A.     MRS. CLINTON HAS A PRIVACY INTEREST IN THE NONDISCLOSURE OF THE DRAFTS.

Regardless of who they are, individuals have a "substantial privacy interest . . . in controlling information concerning criminal charges for which they were not convicted."  *ACLU v. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014).  "The presumption of innocence stands as one of the most fundamental principles of our system of criminal justice; defendants are considered innocent unless and until the prosecution proves their guilt."  *Id.* at 933.  "Individuals who are charged with a crime and ultimately prevail of course remain entitled to a version of this presumption."  *Id.*  "Although the fact that such defendants were accused of criminal conduct

may remain a matter of public record, they are entitled to move on with their lives without having the public reminded of their alleged but never proved transgressions." *Id.*

"[P]ublic officials 'do not surrender all rights to personal privacy when they accept a public appointment.'" *Citizens for Resp. & Ethics in Wash. (CREW) v. Dep't of Justice*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) (quoting *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996)). At most, their "'rights to personal privacy interest'" are "'somewhat diminished.'" *Id.* Like everyone else, public officials possess a "privacy interest . . . in controlling information concerning criminal charges for which they were not convicted." *See ACLU*, 750 F.3d at 929. Rejecting the contention that any such interest "[is] entitled to little, if any consideration," the D.C. Circuit has said:

> [R]evelation of the fact that an individual has been investigated for suspected criminal activity represents a significant intrusion on that individual's privacy cognizable under Exemption 7(C). The degree of intrusion is indeed potentially augmented by the fact that the individual is a well[-]known figure and the investigation one which attracts . . . much national attention . . . The disclosure of that information would produce the unwarranted result of placing the named individuals in the position of having to defend their conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings.

*Fund for Const. Gov't*, 656 F.2d at 864, 865.

NARA subscribes to these principles. As Ms. Murphy says:

> Protecting against the disclosure of allegations of illegality that do not result in an indictment against a living person is among the most sensitive of privacy interests that NARA protects. NARA holds approximately 76,898 cubic feet of U.S. Department of Justice records, including those of the U.S. Attorneys' offices, and, approximately 17,537 cubic feet of Federal Bureau of Investigation records. *NARA staff routinely examines these records when access is requested to ensure that unsubstantiated and unproven allegations of criminal wrongdoing regarding living person are not disclosed to the public.*

2d Murphy Decl. ¶ 8 (emphasis added).

Plaintiff argues that Mrs. Clinton does not have a privacy interest in nondisclosure of the drafts of the indictment because "[i]t has long been publicly known that Mrs. Clinton was investigated by the independent counsel for allegedly making false statements to federal investigators and allegedly withholding evidence from federal investigators while she was First Lady" and because "[i]t is also publicly known that OIC prepared draft indictments of Mrs. Clinton regarding these allegations."  Pl. Mem. at 20.  This argument is without merit.  "'[T]he fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of [requested] information."  *People for the Ethical Treatment of Animals (PETA) v. Nat'l Insts. of Health*, 745 F.3d 535, 545 (D.C. Cir. 2014).  Nor does "the release of the name of one person vitiate[] the privacy interests of other individuals, *or any privacy interest in other personal information about that person.*"  *Sinsheimer v. Dep't of Homeland Sec.*, 437 F. Supp. 2d 50, 57 (D.D.C. 2006) (emphasis added).

Plaintiff acknowledges that "the independent counsel . . . 'concluded that there was insufficient evidence to prove beyond a reasonable doubt that Mrs. Clinton had committed any federal offense.'"  Pl. Mem. at 5-6 (quoting Final Rep. at 411).  Disclosing the drafts of the indictment would therefore deprive Mrs. Clinton of the ability to "control[] information concerning criminal charges" that were never brought against her, *see ACLU*, 750 F.3d at 929, thereby depriving her of "[t]he presumption of innocence [that] stands as one of the most fundamental principles of our system of criminal justice," *see id.* 933, and "placing [her] in the position of having to defend [her] conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings."  *See Fund for Const. Gov't*, 656 F.2d at 865.  No less than anyone else, therefore, Mrs. Clinton has a privacy interest in the nondisclosure of the drafts.

13

Making a different argument, plaintiff assumes, but does not show, that the D.C. Circuit authorized the publication of the final reports prepared by OIC Whitewater.[8]  Decl. of Paul J. Orfanedes (Mar. 11, 2016) (Orfanedes Decl.), ECF No. 12-1, ¶ 2.  Based on that assumption, plaintiff argues that Mrs. Clinton does not have a privacy interest in the nondisclosure of the drafts because orders protecting her privacy were never issued by the D.C. Circuit.  Pl. Mem. at 4 n.2.  "Inferences from silence are perilous," however.  *Coleman v. Interco Inc. Divs.' Plans*, 933 F.2d 550, 552 (7th Cir. 1991) (Posner, J.).  Plaintiff does not point to anything suggesting that the D.C. Circuit ever took any action to vitiate the privacy interest of Mrs. Clinton in the nondisclosure of the drafts, much less that it was ever authorized to take any such action.  Plaintiff's argument is thus without merit.

### B.   PLAINTIFF HAS NOT SHOWN THAT ANY PUBLIC INTEREST IN THE DISCLOSURE OF THE DRAFTS OUTWEIGHS THE INTEREST OF MRS. CLINTON IN THEIR NONDISCLOSURE.

Where, as here, "the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure."  *Favish*, 541 U.S. at 172.  "First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific that having the information for its own sake."  *Id.*  "Second, the citizen must show the information is likely to advance that interest."  *Id.*

 "[T]he only cognizable public interest under FOIA is 'the citizens' right to be informed about know what their government is up to.'"  *PETA*, 745 F.3d at 542 (quoting *Dep't of Justice*

---

[8] Before an OIC ceases operations, the Independent Counsel in charge of the office is required to file a final report with a division of the D.C. Circuit, *see* 28 U.S.C. § 49, "setting forth fully and completely a description of the work of the independent counsel, including the disposition of all cases brought."  28 U.S.C. § 594(h)(1)(B).  The division of the D.C. Circuit is authorized to "release to the Congress, the public, or any appropriate person, such portions of [the] report as [it] considers appropriate," *id.* § 594(h)(2), and is directed to "make such orders as are appropriate to protect the rights of any individual named in such report and to prevent undue interference with any pending prosecution."  *Id.*

*v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 770 (1989)).  "'[M]atters of

substantive law enforcement policy . . . are properly the subject of public concern.'"  *CREW*, 746

F.3d at 1093 quoting *Reporters Comm.*, 489 U.S. at 766 n.18).  The courts therefore have

recognized a "public interest" in the manner in which agencies with ongoing law enforcement

responsibilities "carr[y] out substantive law enforcement policy."  *See id.*  Such an interest has

thus been recognized in determining how the FBI and Department of Justice "handle the

investigation and prosecution of crimes that undermine the very foundation of our government,"

*id.*; in "knowing whether the State Department has adequately monitored Haiti's compliance

with its promise not to prosecute returnees," *Dep't of State v. Ray*, 502 U.S. 164, 178 (1991); in

knowing how the National Institutes of Health "handle[] complaints concerning animal abuse

and misappropriation of federal research funds," *PETA*, 745 F.3d at 542; in determining whether

the Farm Service Agency "is catching cheaters and lawfully administering its subsidy and benefit

programs," *Multi Ag Media v. Dep't of Agric.*, 515 F.3d 1224, 1232 (D.C. Cir. 2008); in finding

out whether the Federal Emergency Management Agency has been a "proper steward" of public

funds in disbursing disaster assistance to individuals, *News-Press v. Dep't of Homeland Sec*, 489

F.3d 1173, 1196 (11th Cir. 2007); and in understanding why "particular areas are designated as

habitats" for endangered species by the Secretary of the Interior and the Fish and Wildlife

Service.  *Nat'l Ass'n of Homebuilders v. Norton*, 309 F.3d 26, 36 (D.C. Cir. 2002).

Plaintiff tries to bring itself within the ambit of these cases by arguing on the basis of an

alleged "[G]oogle search" that "[t]he public interest in the operations and activities" of the

Whitewater OIC "remains substantial nearly two decades later."[9]  Pl. Mem. at 22.  This argument

---

[9] Plaintiff thus alleges that a Google search conducted on March 5, 2016, "for the words 'Starr Report' yield[ed]
13,200,000 results."  Pl. Mem. at 22; Orfanedes Decl. ¶ 10.  The same search conducted by undersigned counsel on
Continued

ignores two important facts.  First, the legislation authorizing the appointment of new

independent counsels was permitted to lapse in 1999.  *See* 28 U.S.C. § 599.[10]  Second, the

Whitewater OIC ceased operations in 2004.  1st Murphy Decl. ¶ 18.  Any contemporary interest

in the "operations and activities" of the Whitewater OIC is thus interest of an historical nature,

not interest in in the manner in which an agency with ongoing law enforcement responsibilities

"carries out substantive law enforcement policy."  *See CREW*, 746 F.2d at 1093.  Any such

interest is therefore insufficient to outweigh the interest of Mrs. Clinton in nondisclosure of the

drafts.

Plaintiff argues in the alternative that the public has an interest in the disclosure of the

drafts because Mrs. Clinton "now seeks the nation's highest office" and because "making false

statements and withholding evidence from federal investigators bears on [her] honesty,

credibility, and trustworthiness."  Pl. Mem. at 23.  This argument is without merit.  Mrs.

Clinton's "honesty, credibility, and trustworthiness" relates at most to Mrs. Clinton and thus says

nothing about "'what [the] government is up to.'"  *See PETA*, 745 F.3d at 542 (quoting

*Reporters Comm.*, 489 U.S. at 770).  Plaintiff's attempt to imply that Mrs. Clinton is guilty of

criminal conduct because of alleged charges that were never brought against her, much less

substantiated, only underscores the privacy interest at stake and the lack of any corresponding

public interest that would justify disclosure of the drafts.

---

April 12, 2016, yielded 75,200 results, some or all of which dealt with the *Final Report of the Independent Counsel In re Madison Guaranty Savings and Loan Association regarding Monica Lewinsky and Others* (Mar. 6, 2002).

[10] Section 599 provides that "[t]his chapter shall continue in effect with respect to then pending matters before an independent counsel that in the judgment of such counsel require such continuation until that independent counsel determines such matters have been completed" but otherwise provides that "[t]his chapter shall cease to be effective five years after the date of the enactment of the Independent Counsel Restoration Act of 1994."  The Independent Counsel Restoration Act of 1994, Pub. L. No. 103-270, 108 Stat. 732, was enacted on June 30, 1994.

### III.  THE DRAFTS OF THE INDICTMENT MAY BE WITHHELD IN THEIR ENTIRETY.

"Subsection (b) of the FOIA provides that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.'"  *EPIC*, 678 F.3d at 933 (quoting 5 U.S.C. § 552(b)).  "[N]on-exempt portions of a document" need not be disclosed, however, if they are "inextricably intertwined with exempt portions."  *Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

Plaintiff argues that NARA may not withhold the drafts of the indictment "until a segregability analysis has been undertaken and any 'reasonably segregable portion' of each [draft] has been disclosed."  Pl. Mem. at 25.  This argument is without merit.  As stated above, "[the] draft indictments reflect the net result of all of the evidence gathered throughout the grand jury investigatory process."  2d Murphy Decl. ¶ 5.  "As a result, they are inextricably intertwined with the grand jury process and are not subject to segregation."  *Id.*  "NARA's practice is therefore to withhold, in its entirety, any draft indictment of a living person if no indictment is ever formally issued by the grand jury against that person."  *Id.*  NARA has followed that practice here, and has done so appropriately.

### CONCLUSION

For the foregoing reasons, NARA's motion for summary judgment should be granted and plaintiff's cross motion for summary judgment should be denied.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CHANNING D. PHILIPS
United States Attorney

17

ELIZABETH J. SHAPIRO
Deputy Director

s/ *David M. Glass*
DAVID M. GLASS, DC Bar 544549
Senior Trial Counsel
Department of Justice, Civil Division
20 Massachusetts Ave., N.W., Room 7200
Washington, D.C.  20530-0001
Tel: (202) 514-4469/Fax: (202) 616-8470
E-mail: david.glass@usdoj.gov
Dated: April 18, 2016                    Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2016, I served the within memorandum, the exhibit to

the memorandum, and defendant's response to plaintiff's statement under LCvR 7(h) on all

counsel of record by filing them with the Court by means of its ECF system.

s/ *David M. Glass*