*Judicial Watch v. Nat'l Archives & Records Admin.*
No. 1:15-cv-01740-RBW

Defendant's Combined Reply in Support of Its Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment

Ex. A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. A. No. 15-CV-1740 (RBW) |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) ) ) | |
| Defendant. | ) ) | |

## SECOND DECLARATION OF MARTHA WAGNER MURPHY

I, Martha Wagner Murphy, hereby declare as follows:

1. This is my second declaration in the above-referenced case. I have reviewed and have become familiar with Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Memo"). I submit this second declaration to supplement my February 1, 2016 Declaration, and to strengthen my explanation of the analytical process that the National Archives and Records Administration ("NARA") engaged in when it reviewed the requested documents in accordance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. When my staff receives a valid, perfected third-party FOIA request for access to a box of records that a prior Independent Counsel ("IC") has marked as containing grand jury

-1-

material, NARA examines each individual record in the box to determine whether each document should be withheld pursuant to Exemption 3 (Fed. R. Crim. P. 6(e)). Thus, although the IC markings on boxes serve as a guide, they are not dispositive, and my staff does conduct an independent review in order to make its own determinations as to whether the material does constitute grand jury information. For instance, in response to a 2005 FOIA request (not from Plaintiff) for access to a memorandum dated April 22, 1998 from "HRC Team" to "All OIC Attorneys" ("Evidence Memorandum"), NARA examined that document and compared it to the publicly released "Final Report of the Independent Counsel, *In re Madison Guaranty Savings and Loan Association*" of January 5, 2001 ("Final Report"). When NARA examined the Evidence Memorandum for possible release in response to that 2005 FOIA request, we understood that it may contain non-grand jury material. Our examination, which included an analysis of the factual and stylistic presentment in both documents, enabled us to draw important distinctions between information in the Evidence Memorandum that had already been released to the public in the Final Report, and that information in the Evidence Memorandum that was considered grand jury information and should continue to be withheld. That approach was fully consistent with NARA's long-standing practice of taking into consideration the overall context of the material being requested, and in this example, resulted in a partial release of the Evidence Memorandum with redactions for grand jury material (as well as other redactions).

4.  Similarly, NARA followed the same approach when it responded to Plaintiff's March 9, 2015 FOIA request for "[a]ll versions of indictments against Hillary Rodham Clinton …" Again, we took into account the Final Report, and the redacted Evidence Memorandum (which we had also released to Plaintiff a year earlier in partial response to their June 2014 FOIA request). The Evidence Memorandum presented the IC's "best assessment of some of the

contrary evidence and theories likely to be presented by the defendants in the event an indictment is returned and a trial takes place, as well as evidentiary considerations." Plaintiff's Memo, Exhibit 3 (Part 1), p. 3. We also took into account the fact that when the IC issued the mandatory Final Report to the public, no draft indictments were included.

5. Both the partially-released Evidence Memorandum and the fully-released Final Report contrast with the drafts of the indictment at issue in this litigation in both purpose and form. Any indictment is a written accusation of a crime and is crafted for the specific purpose of persuading a grand jury to formally charge one or more individuals. These draft indictments reflect the net result of all of the evidence gathered throughout the grand jury investigatory process; they represent a compilation and distillation of all of the evidence gathered and presented before the grand jury up until the time the draft indictments were prepared. As a result, they are inextricably intertwined with the grand jury process and are not subject to segregation. NARA's practice is therefore to withhold, in its entirety, any draft indictment of a living person if no indictment is ever formally issued by the grand jury against that person.

6. If we are able to ascertain that an indictment has been issued by a grand jury, our practice is to release both the issued indictment as well as any of the underlying drafts, or at least those portions of drafts that are relevant to any charges that are ultimately brought. Our practice is also to release drafts, or portions thereof, if they contain information obtained separate and apart from the grand jury process, such as a separate prosecutorial investigation. Neither of those scenarios exists in this case for at least two reasons. First, as is evident in the Final Report, the Whitewater grand jury was never presented with an indictment of Secretary Clinton. Second, none of the drafts that we reviewed contained information that we determined had been obtained separate from the grand jury process. As a result, we withheld all the drafts of the indictments.

Accompanying fax cover pages, notes, and/or memoranda played no role in our decision to withhold the draft indictments in full; we consider these accompanying documents to be non-substantive, but withheld them since they were physically attached to – and an integral part of – the drafts.

7.      Because a draft indictment is inextricably tied to the Grand Jury process, the development of the indictment, illuminated as each draft carefully refines the argument for charging the accused individuals, provides a roadmap to that process. Unlike the Evidence Memorandum, which NARA released in part, draft indictments that do not result in any further prosecutorial action are not capable of a similar segregability analysis without revealing the workings of the Grand Jury. Again, this has been NARA's practice reaching back many years, starting with indictments drafted by the Watergate Special Prosecution Force during Watergate.

8.      With respect to the significant privacy interests at stake in these documents, as noted in ¶ 34 of my February 1, 2016 Declaration, individuals who are never indicted, charged and convicted of any criminal wrongdoing retain a significant personal privacy interest with respect to draft indictments that were contemplated by the IC, discussed internally among IC staff, but ultimately never issued. Protecting against the disclosure of allegations of illegality that do not result in an indictment against a living person is among the most sensitive of privacy interests that NARA protects. NARA holds approximately 76,898 cubic feet of U.S. Department of Justice records, including those of the U.S. Attorneys' offices, and, approximately 17,537 cubic feet of Federal Bureau of Investigation records. NARA staff routinely examines these records when access is requested to ensure that unsubstantiated and unproven allegations of criminal wrongdoing regarding living persons are not disclosed to the public.

-5-

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this   18th day of April, 2016.

*[signature]*

MARTHA WAGNER MURPHY
Chief, Special Access and FOIA Branch
Research Services Division
National Archives and Records Administration
College Park, Maryland