**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 15-cv-1740 (RBW) |
| v. | ) | |
| | ) | |
| NATIONAL ARCHIVES AND | ) | |
| RECORDS ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Paul J. Orfanedes
D.C. Bar No. 429716
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC  20024
Tel:     (202) 646-5172
Fax:     (202) 646-5199
Email:  porfanedes@judicialwatch.org

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**Page**

I.      Introduction......................................................................................................1

II.     Argument ..........................................................................................................2

        A.      Rule 6(e) and the Archives ..................................................................2

        B.      The Murphy Declarations .....................................................................4

        C.      The Archives' "Prior Disclosure" Argument.........................................9

        D.      Privacy vs. Public Interest...................................................................11

        E.      Segregablity ........................................................................................16

III.    Conclusion ......................................................................................................19

i

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Afshar v. U.S. Dep't of State*,
    702 F.2d 1125 (D.C. Cir. 1983)...................................................................................10

*Am. Civil Liberties Union v. U.S. Dep't of State*,
    878 F. Supp.2d 215 (D.D.C. 2012)..............................................................................16

*Bagwell v. U.S. Dep't of Justice*,
    2015 U.S. Dist. LEXIS 169270 (D.D.C. Dec. 18, 2015)..............................................8

*Callaway v. U.S. Dep't of Treas.*,
    2007 U.S. Dist. LEXIS 10251 (D.D.C. Aug. 31, 2007) ..............................................10

*Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*,
    746 F.3d 1082 (D.C. Cir. 2014)...................................................................................13

*Davis v. U.S. Dep't of Justice*,
    968 F.2d 1276 (D.C. Cir. 1992)...................................................................................10

*Fund for Constitutional Government v. National Archives and Records Serv.*,
    656 F.2d 856 (D.C. Cir. 1981).......................................................................................2

*In re Madison Guaranty Savings and Loan*,
    334 F.3d 1119 (D.C. Cir. 2003).....................................................................................8

*In re Petition of Craig*,
    131 F.3d 99 (2d Cir. 1997)............................................................................................9

*In re Sealed Case*,
    192 F.3d 995 (D.C. Cir. 1999) ...............................................................................9, 18

*In re Sealed Case*,
    151 F.3d 1059 (D.C. Cir. 1998) .................................................................................18

*Juarez v. U.S. Dep't of Justice*,
    518 F.3d 54 (D.C. Cir. 2008) .....................................................................................16

*Mead Data Central, Inc. v. U.S. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ...................................................................................16

*Milner v. Dep't of the Navy*,
    562 U.S. 562 (2011).......................................................................................................2

**Page**

*National Archives and Records Admin. v. Favish*,
  541 U.S. 157 (2004)..........................................................................................3

*Shapiro v. U.S. Dep't of Justice*,
  2016 U.S. Dist. LEXIS 7535 (D.D.C. Jan. 22, 2016) .......................................8

**Rules and Statutes**

Fed. R. Civ. P. 56(c) ...........................................................................................14

Fed. R. Crim. P. 6(e) ................................................................................. *passim*

Fed. R. Crim. P. 6(e)(2)(B) ...................................................................................4

LCvR 7(h)(1) .......................................................................................................14

5 U.S.C. § 552(b) .................................................................................................16

28 U.S.C. § 594(h) .................................................................................................8

28 U.S.C. § 594(h)(2) .....................................................................................12, 13

28 U.S.C. § 594(k)(1) .............................................................................................3

28 U.S.C. § 594(k)(3)(A) ........................................................................................3

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to Rule 56(c)

of the Federal Rules of Civil Procedure, respectfully submits this reply in opposition to

Defendant National Archives and Records Administration's opposition to Judicial Watch's

cross-motion for summary judgment.

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

## I.    Introduction.

In light of the publication of hundreds of pages of grand jury and other evidence and

analysis in the Final Report of the Independent Counsel in *In re Madison Guaranty Savings and*

*Loan Association*, published January 5, 2001 ("the Report") and the 206 page memorandum,

dated April 22, 1998 to "All OIC Attorneys," from the "HRC Team" and bearing the subject line

"Summary of Evidence:  Hillary Rodham Clinton and Webb Hubbell" ("the Evidence

Memorandum"),[1] the Archives' invocation of Rule 6(e) and Exemption 7(C) raises a basic, core

question:  what grand jury secrecy or personal privacy interest in the draft indictments remain to

be protected?  The Archives has no answer to this question.  Its attempt to withhold the draft

indictments at issue is fatally flawed as a result.

In addition, the Archives' combined reply and opposition fundamentally changes the

agency's purported reasons for withholding the draft indictments from Plaintiff.  The Archives

initially claimed that disclosure of the draft indictments would reveal the identities of witnesses

who testified before the grand jury, documents subpoenaed by the grand jury, and actual grand

jury testimony.  The Archives now appears to claim that the draft indictments do not contain

direct, grand jury evidence, but only reflect a "compilation and distillation" of the net result of

the grand jury's investigation.  It also appears to claim that it is withholding the draft indictments

---

[1]  Volume II, Part B of the Report is attached to Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute and Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment as Exhibit 2.  The Evidence Memorandum is attached to that same document as Exhibit 3.

from Plaintiff because the Archives has a longstanding policy of withholding draft indictments when no indictment was returned by a grand jury.

What is clear is that, given the Archives' failure to answer the fundamental question raised by this lawsuit and its opaque and shifting, if not contradictory, reasons for its withholdings, the Archives' claims of exemption cannot be sustained. The draft indictments must be produced to Plaintiff. At a minimum, the Archives should only be allowed to withhold information in the draft indictments that would directly reveal actual, non-public, grand jury material.

## II. Argument.

### A. Rule 6(e) and the Archives.

The Archives forgets that the Freedom of Information Act ("FOIA") is a disclosure statute, not a withholding statute, and that FOIA's exemptions "must be narrowly construed." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011). It also disregards the admonishment that FOIA's exemptions "are explicitly made exclusive." *Id.* Unless a record clearly falls within one of FOIA's exclusive, narrowly construed exemptions, the record must be produced.

Although Plaintiff raised the issue expressly, the Archives failed to identify a single case in which it was found to be subject to grand jury secrecy rules or have authority to withhold records under Rule 6(e). *Fund for Constitutional Government v. National Archives and Records Serv.*, 656 F.2d 856 (D.C. Cir. 1981) is not that case. The request at issue in *Fund for Constitutional Government* was made to prosecutors, not the Archives' predecessor agency, and the records at issue were in the custody and control of prosecutors, not the predecessor agency, when the request was made. *Id.* at 860. *Fund for Constitutional Government* also did not

address, much less decide, the question of whether the predecessor agency had authority to withhold responsive records under Rule 6(e).  It also predates the independent counsel statute.

*National Archives and Records Admin. v. Favish*, 541 U.S. 157 (2004), which the Archives also cites, did not concern Rule 6(e) or grand jury secrecy at all.  It concerned photographs taken by U.S. Park Police during the course of an investigation, not any matter occurring before a grand jury.  *Id.* at 160-61.  The Archives withheld the photographs under FOIA Exemption 7(C), not Rule 6(e).  *Favish* does not support the Archives' argument either.

The remainder of the Archives' argument effectively seeks to rewrite both Rule 6(e) and the independent counsel statute.  The Archives cannot and does not argue that it is among the persons and entities expressly identified in Rule 6(e) as being subject to the rule's secrecy provisions.  It also cannot and does not argue that the independent counsel statute authorizes the Archives to invoke Rule 6(e) to withhold independent counsel records requested under FOIA. The statute says no such thing.  It requires that independent counsel records be transferred to the Archivist upon the termination of an investigation and, that "[b]efore this transfer, the independent counsel shall clearly identify which of these records are subject to rule 6(e) . . . and which of these records have been classified as national security information."  28 U.S.C. § 594(k)(1).  It also requires that independent counsel records transferred to the Archivist "shall be governed by section 552 of title 5," which is FOIA.  *Id.* at § 594(k)(3)(A).  It does not say that the Archives is to serve as the agent of the independent counsel or U.S. Department of Justice for purposes of grand jury secrecy obligations or that it stands in these entities' shoes.  It is completely silent on the question.

The Archives tries to fill this silence by making policy arguments, but those arguments are unavailing.  Congress obviously intended to create an entirely different statutory scheme for

information gathered during the course of independent counsel investigations because the statute's reporting requirements and comment provisions are completely at odds with ordinary criminal investigations.  The statute's labeling obligation is just that and nothing more.  Reading it according to its terms does not transform it into a make work provision.  Congress also could have easily included language in section 594(k) authorizing the Archives to withhold grand jury material from FOIA requesters even though the Archives is not referenced in Rule 6(e).  It obviously did not, and the absence of such a provision does not mean one should be read into the statute.

The Archives also does not point to any other source of law that authorizes, obligates, or requires it to withhold grand jury material contained in records transferred to it following the conclusion of independent counsel investigations.  Given Rule 6(e)'s express limitation on its own applicability, its express affirmation that "[n]o obligation of secrecy may be imposed on any person" except in accordance with the rule's own terms (Fed. R. Crim. P. 6(e)(2)(B)), and the absence of any express provision in the independent counsel statute authorizing the Archives to withhold independent counsel records under Rule 6(e), Congress' intent is clear.  This clear intent is further confirmed by the well-established admonitions that FOIA's exemptions are exclusive and intended to be construed narrowly and that FOIA is a disclosure statute, not a withholding statute.  The Archives cannot invoke Rule 6(e) to withhold independent counsel records requested under FOIA.

B.    The Murphy Declarations.

The Archives does not claim that every line in each draft indictment reveals "a matter occurring before the grand jury."  Fed. R. Crim. P. 6(e)(2)(B).  Any such claim would be disingenuous.  An indictment typically contains a caption, a list of offense(s) being charged, a

- 4 -

brief statement of when and where the alleged offense(s) took place and how the accused is alleged to have committed the offense(s), and a signature block.  For each count, the indictment also must give the official or customary citation of the statute, rule, regulation, or other provision of law that the accused is alleged to have violated.  None of these items requires revealing matters that occurred before the grand jury, and, in any event, indictments typically do not identify particular witnesses who testified before the grand jury, particular documents subpoenaed by the grand jury, or quote from or even describe grand jury testimony.

In her first declaration, Chief Archivist Martha Wagner Murphy testified that the draft indictments "collectively reflect[] names and identifying information of individuals subpoenaed – or intended to be subpoenaed – to testify before the grand jury as well as information identifying specific records subpoenaed during the grand jury process."  Declaration of Martha Wagner Murphy ("1st Murphy Decl.") at para. 25.  She also testified that the drafts "reflect and quote grand jury testimony, and reveal the inner workings and direction of the grand jury."  *Id.* If Ms. Murphy's assessment is correct, then the draft indictments are atypical documents. Nonetheless, any such names, individual documents, or quoted testimony could be redacted – provided it was not among the voluminous grand jury material already made public by the D.C. Circuit or the Archives in either the Report or the Evidence Memorandum.  The remainder then could be disclosed to Plaintiff.  This appears to be the process followed by the Archives in producing  the Evidence Memorandum, although Plaintiff has identified substantial grand jury material disclosed through the publication of the Evidence Memorandum that does not appear to have been disclosed through the publication of the Report.  *See* Second Declaration of Paul J. Orfanedes ("2nd Orfanedes Decl."), attached as Exhibit 1, at para. 3.[2]

---

[2]  This additional declaration is not based on new material, but is a further analysis of the same charts and material – the Report and the Evidence Memorandum – attached to and described in the Declaration of Paul J. Orfanedes ("1st

When Plaintiff brought to the Court's attention the truly enormous quantities of grand jury material already made public in the Report and Evidence Memorandum, Ms. Murphy changed her testimony.  In her second declaration, Ms. Murphy backs away from any claim that the draft indictments identify individual witnesses or subpoenaed documents or quote from witnesses' testimony directly.  Instead, she describes the draft indictments as collectively reflecting evidence gathered during the independent counsel's investigation:

> These draft indictments reflect the net result of all the evidence gathered throughout the grand jury investigatory process; they represent a compilation and distillation of all the evidence gathered and presented before the grand jury up until the time the draft indictments were prepared.  As a result, they are inextricably intertwined with the grand jury process and are not subject to segregation.

Second Declaration of Martha Wagner Murphy ("2nd Murphy Decl.") at para. 5.  As a result, Plaintiff and the Court are left with inconsistent, if not contradictory descriptions of the draft indictments.  Do the drafts identify particular, individual witnesses and subpoenaed documents? Do they quote from individual grand jury witnesses' actual testimony, as unlikely as that seems? Or do they refer to such materials generally or simply reflect the collective fruits of all of the independent counsel's efforts?  If the drafts only reflect the collective fruits of the independent counsel's work and producing them to Plaintiff would reveal Rule 6(e) material, how do the draft indictments differ in substance from a final indictment and why would publication of any final indictment not violate Rule 6(e)?  Rather than clarifying the basis for the Archives' withholdings, Ms. Murphy's second declaration makes the basis for the agency's withholdings even less clear.

It also is unclear how, if the draft indictments "represent a compilation and distillation" of evidence, the Archives is not also withholding non-grand jury evidence gathered during the

Orfanedes Decl.").  *See* Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute and Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment, at Exhibit 1.

independent counsel's investigation.  2nd Murphy Decl. at para. 5.  Ms. Murphy asserts in her second declaration that "none of the drafts that we reviewed contained information that we determined had been obtained separate from the grand jury process."  *Id.* at para. 6.  She does not say how this determination was made or how the Archives differentiated between investigatory materials generated from the grand jury process and investigatory material generated from other aspects of the independent counsel's investigation.  She also does not say how, or even if, the Archives was able to determine whether the draft indictments compile and distill from the grand jury investigation only, the non-grand jury aspects of the independent counsel's investigations, or both.[3]  The more the Archives explains its withholdings, the less comprehensible they become.

It is not even clear what comparison, if any, the Archives undertook of the substance of the draft indictments, the Report, and the Evidence Memorandum.  Ms. Murphy testifies that the Report and the Evidence Memorandum "contrast with the draft indictment at issue in this litigation in both purpose and form," but she does not assert that they differ factually or in substance.  2nd Murphy Decl. at para. 5.  If anything, differences in substance between the records already made public – the Report and the Evidence Memorandum – and the records not yet made public – the draft indictments – lie at the heart of this case, yet Ms. Murphy is silent on this issue.  The Archives has not satisfied its burden of proving its Rule 6(e) claim.

Moreover, Ms. Murphy also testifies in her second declaration that the Archives' decision to withhold the draft indictments from Plaintiff was based on a longstanding "practice" regarding draft indictments in general:  "NARA's practice is therefore to withhold, in its entirety, any draft indictment of a living person if no indictment is ever formally issued by the grand jury against that person."  2nd Murphy Decl. at para. 5.  According to Ms. Murphy, if the Archives can

---

[3]   As Plaintiff demonstrated in its opening memorandum, the Report and the Evidence Memorandum show that the independent counsel relied on substantial, non-grand jury material.  *See* 1st Orfanedes Decl. at Exhibits A and B.

ascertain that an indictment has been issued, its "practice is to release both the indictment as well as any of the underlying drafts, or at least those portions of the drafts that are relevant to any charges that are ultimately brought."  *Id.* at para. 6.

There is nothing particularly unique about draft indictments, however, that warrants any kind of special treatment, policy, or practice.  In *Bagwell v. U.S. Dep't of Justice*, 2015 U.S. Dist. LEXIS 169270, *9 (D.D.C. Dec. 18, 2015), the Court did not treat a draft indictment responsive to a FOIA request any differently than any other responsive records in finding that the agency failed to satisfy its burden of proof.  It also is obvious that not all draft indictments are identical, and certainly not all draft indictments are prepared by independent counsel, who were governed by a very different set of rules than are other prosecutors.  *See* 28 U.S.C. § 594(h) (requiring independent counsel report); *In re Madison Guaranty Savings and Loan*, 334 F.3d 1119, 1128 (D.C. Cir. 2003) (noting that the requirement for independent counsel reports is "a complete departure from the authority of a United States Attorney" and "contrary to the practice in federal Grand Jury investigations").   To the extent the Archives claims that it was only following a long-established practice of not disclosing draft indictments unless an indictment was formally issued, then the Archives has failed to satisfy its FOIA obligations because following an agency practice is not grounds for withholding records requested under FOIA.  *Shapiro v. U.S. Dep't of Justice*, 2016 U.S. Dist. LEXIS 7535, *45 (D.D.C. Jan. 22, 2016) (rejecting FBI FOIA policy of withholding "search slips" and other processing records because "FOIA itself does not do so, and the FBI cannot act on the basis of an exemption or exclusion that Congress has not provided.").

Regardless, Ms. Murphy's testimony about the Archives' longstanding practice only add further confusion to whether the Archives actually conducted an individualized, line-by-line review of each draft indictment or simply determined that, because the grand jury did not return

an indictment against Mrs. Clinton, agency practice required the drafts not be produced.  As a result of Ms. Murphy's opaque and shifting, if not contradictory, testimony, Plaintiff and the Court have no clear picture of what review the Archives actually conducted, and the Archives has failed to satisfy its burden of proof on its claims of exemption.

> C.    The Archives' "Prior Disclosure" Argument.

Plaintiff does not claim that the draft indictments at issue have ever previously been disclosed.  Plaintiff does not make a "prior disclosure" argument.  Rather, Plaintiff argues that so much grand jury and non-grand jury material from the independent counsel's investigation has been made public that there is no secrecy left to protect.[4]  As Plaintiff demonstrated in its opening brief, grand jury material can lose its protected status when it becomes sufficiently widely known.  *In re Sealed Case*, 192 F.3d 995, 1004 (D.C. Cir. 1999).  "The extent to which the grand jury material in a particular case has been made public is clearly relevant because even partial previous disclosure often undercuts many of the reasons for secrecy."  *Id.* (*quoting In re Petition of Craig*, 131 F.3d 99, 107 (2d Cir. 1997).  Whether grand jury material has "lost its secrecy should be considered at the *prima facie* stage."  *Id*. at 1004, n. 12.

As the agency seeking to withhold records requested under FOIA, the Archives bears the burden of proving that an exemption applies.  In in this instance, the Archives bears the burden of proving that the draft indictments are secret.  By citing to the mountain of investigatory materials, including both grand jury and non-grand jury evidence, made public in the Report and the Evidence Memorandum, Plaintiff has demonstrated that any grand jury material in the draft indictments is no longer secret or, at a minimum, that that there is no longer a reason for any secrecy.  *In re Sealed Case*, 192 F.3d at 1004.  Accordingly, the Archives cannot meet its burden of proving at the *prima facie* stage that Rule 6(e) applies.  *Id.* at 1004, n.12.

---

[4]  The same is true for evidence gathered by the independent counsel outside the grand jury process.

A "prior disclosure" argument is like an affirmative defense in that it shifts the burden of proof to the requester after the agency has satisfied its initial burden.  A plaintiff asserting a prior disclosure claim bears the burden of "pointing to specific information in the public domain that *appears* to duplicate that being withheld."  *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (emphasis added).  "The ultimate burden of persuasion, to be sure, remains with the government, but a party who asserts that material is publicly available bears the burden of *production* on that issue."  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (emphasis original).  "Otherwise, the government would face 'the task of proving a negative – that the information has *not* been revealed,' a situation which 'might require the government to undertake an exhaustive, potentially limitless search.'"  *Callaway v. U.S. Dep't of Treas.*, 2007 U.S. Dist. LEXIS 102512, *31 (D.D.C. Aug. 31, 2007) (*quoting Davis*, 968 F.2d at 1280) (emphasis original).  Because the Archives failed to prove that the information in the draft indictments is secret, the burden never shifted to Plaintiff to satisfy a "prior disclosure" affirmative defense.

Plaintiff has satisfied this "burden of production" in any event.  *Davis*, 968 F.2d at 1279. Specifically, Plaintiff cited to *and* produced the Report and the Evidence Memorandum.  To the extent the Archives argues that the draft indictments identify individual witnesses' names, particular documents subpoenaed by the grand jury, and actual quotes of grand jury testimony, Plaintiff has identified voluminous quantities of precisely such grand jury materials that have already been made public in both the Report and the Evidence Memorandum.  At a minimum, the Archives should have compared the Report and the Evidence Memorandum to the draft indictments, identified any particular materials in the draft indictment that are still secret, and

redacted only those materials from the drafts.[5]  To the extent the Archives argues that the draft indictments represent a "compilation and distillation" of grand jury materials that collectively reflects the strategy and direction of the grand jury investigation, then the Archives must produce the draft indictments in their entirety because Plaintiff has identified and produced records – the Report and Evidence Memorandum – in which this strategy and direction have been publicly disclosed.  The Evidence Memorandum in particular is a quintessential "strategy and direction" document.  Its purpose was to set forth possible charges against Mrs. Clinton, including all of the evidence that had been gathered, the prosecutors' legal theories, and different ways the evidence and legal theories could be presented to a jury.  Similarly, the purpose of the Report was to summarize the investigation's findings and conclusions.  If the Archives' argument is a "strategy and direction" argument, it fails.

However it is analyzed, it is obvious that there is no secrecy left to protect in the draft indictments.  At a minimum, the Archives has not demonstrated that withholding the draft indictments is necessary to protect any grand jury secrets those records still might contain.  The Archives' Rule 6(e) claim fails.

D.    Privacy vs. Public Interest.

Despite claiming that Mrs. Clinton's personal privacy outweighs any public interest in disclosure of the draft indictments, the Archives fails to identify a single, specific privacy interest

---

[5]  Ms. Murphy carefully avoids stating that such a comparison was ever undertaken.  She makes a cryptic reference to "follow[ing] the same approach" as was undertaken with the Report and the Evidence Memorandum, but she never actually, affirmatively states that the Archives compared the Report and the Evidence Memorandum to the draft indictments.  Even her testimony *with respect to the comparison of the Report and the Evidence Memorandum is ambiguous.  She testifies that the Archives' analysis "enabled it to draw important distinctions between information in the Evidence Memorandum that had already been released to the public in the Final Report, and information in the Evidence Memorandum that was considered grand jury information and should continue to be withheld," but that is not the relevant comparison.  The Archives should have compared grand jury information in the Report and the Evidence Memorandum to any grand jury information in the draft indictments.  As it stands, when the Archives produced the Evidence Memorandum, it appears to have disclosed substantial amounts of grand jury material not previously disclosed through the publication of the Report.  2nd Orfanedes Decl. at para. 3.

Mrs. Clinton still has in the draft indictments following the publication of the Report and the Evidence Memorandum.  The Archives relies on generic quotes about Mrs. Clinton's ability to control information, the presumption of innocence, and Mrs. Clinton having to defend herself in a non-judicial, public forum, but those claims ring hollow in light of the hundreds of pages of grand jury materials, non-grand jury materials, and independent counsel legal theories and analysis that are already in the public domain.  The Archives makes no claim that disclosure of the draft indictments will reveal any particular personal, medical, or financial information about Mrs. Clinton, much less anything intimate or potentially embarrassing.  The Archives does not even claim disclosure will reveal anything prosaic about Mrs. Clinton, such as her date or place of birth, date of marriage, street address, telephone number, or email address.  Little, if anything, lies on the privacy side of the scale, and certainly nothing concrete or specific.

The Archives also faults Plaintiff for assuming, but not showing, that the D.C. Circuit authorized publication of the independent counsel's five, final "Whitewater" reports.  Does the Archive really contend that the reports were released without the requisite authorization?  *See* 28 U.S.C. § 594(h)(2) ("The division of the court may release to Congress, the public, or any appropriate person, such portions of a report made under this subsection as the division of the court considers appropriate.").  Plaintiff asked the Court to take judicial notice of the most directly relevant report, the January 5, 2001 Final Report of the Independent Counsel in *In re Madison Guaranty Savings and Loan Ass'n*.  *See* Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute and Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment at 8, n.1.  The Archives failed to respond to Plaintiff's request for judicial notice and, as a result, waived any objection.  The Report itself is evidence of its authorized publication.

- 12 -

Regardless, Plaintiff's point was (and is) that the D.C. Circuit was fully cognizant of the privacy implications of releasing the Report, but nonetheless authorized its release without making any effort to protect personal privacy interests.  *See* 28 U.S.C. § 594(h)(2) ("The division of the court shall make such orders as are appropriate to protect the rights of any individual named in such report.").  Contrary to the Archives' claims, the D.C. Circuit clearly did vitiate Mrs. Clinton's privacy interests by publishing the Report.  Likewise, the Archives vitiated Mrs. Clinton's privacy interests when it released the Evidence Memorandum, which, as Plaintiff has demonstrated, made public additional, grand jury and non-grand jury investigative material not disclosed through publication of the Report.  2nd Orfanedes Decl. at para. 3.  Again, the Archives fails to identify any specific privacy interests Mrs. Clinton still possesses following publication of the Report and the Evidence Memorandum.

By contrast, the public interest in disclosure of the draft indictments is substantial, despite the Archives' disingenuous efforts to minimize that interest.  As Plaintiff demonstrated in its opposition and cross-motion, the public interest in disclosure of the drafts has at least two components, both of which directly bear on citizens' right to be informed about what their government is up to:  (1) public interest in the actions of the independent counsel; and (2) public interest in the actions of Mrs. Clinton as first lady of the United States, as well as in her subsequent actions as a United States senator, United States secretary of state, and the Democratic Party's presumptive nominee for president of the United States.

The Archives cannot deny the "weighty public interest in shining a light on" the independent counsel's investigation of political corruption and ultimate decision not to prosecute a then-sitting first lady of the United States.  *See Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014).  Rather, the Archives tries, but

fails, to minimize the public interest in the independent counsel's investigation by challenging Plaintiff's evidence about the results of simple Google searches for the words "Starr Report" and "Hillary Clinton draft indictment."[6]   In FOIA cases, courts can and often do evaluate the public interest without input from the parties.   Nonetheless, the evidence presented by Plaintiff is the only admissible evidence in the record regarding the public interest.   In contrast to Plaintiff's sworn evidence, the Archives submitted only bald, unsworn allegations that are not properly before the Court on summary judgment.  *See* Fed. R. Civ. P. 56(c)(1).  For this same reason, the Archives also failed to properly refute Plaintiff's statement of undisputed material facts.  *See* LCvR 7(h)(1).  As a result, the Court may even deem Plaintiff's factual allegations to be admitted.  *Id.*

The Archives' attempt to minimize the public interest in the independent counsel's investigations of the Clintons as only "of an historical nature" is not well taken.  The Archives' own mission statement declares, "Public access to government records strengthens democracy by allowing Americans to . . . understand their history so they can participate more effectively in their government."  *See* "Our Vision and Mission," available at http://www.archives.gov/about/ info/mission.html (visited April 30, 2016).  Clearly, public interest that is "historical" in nature is legitimate, valid, and important, and any attempt to diminish or minimize such interest, especially by an agency created to protect and preserve the nation's history, is baseless and improper.

As for the public interest in the actions of Mrs. Clinton, the Archives does not and cannot dispute the fact that, while serving as first lady – an officer of the United States – Mrs. Clinton

---

[6]  The undersigned performed these same searches again on April 30, 2016 and generated "only" 11,100,000 search results for the words "Starr Report," fewer than on March 5, 2016, but still a very substantial amount.  A search for the words "Hillary Clinton draft indictment" yielded 2,800,000 million search results, substantially more than the earlier search.

was investigated for allegedly making false statements to and withholding evidence from federal investigators.  The Archives also does not and cannot dispute that Mrs. Clinton subsequently went on to hold two other, very important public offices, United States senator and United States secretary of state, and that she now seeks the nation's highest office.  At all relevant times Mrs. Clinton was a public official, not a private citizen, and her actions and conduct as first lady, including her actions and conduct during the course of the independent counsel's investigation, clearly bear on the performance of that office under her leadership.  They also bear on the performance of the duties associated with the U.S. Senate seat she subsequently held and the agency she subsequently led, the U.S. Department of State.  Accordingly, her action and conduct as first lady are relevant to what the government "is up to," or at least "was up to" during her tenure in multiple federal offices.  The fact that Mrs. Clinton now seeks further, higher office only magnifies the public interest insofar as her actions and conduct as first lady – including her actions and conduct during the independent counsel's investigation – may shed light on what the entire Executive Branch "may be up to" should Mrs. Clinton be elected president. [7]

Disclosure of the draft indictments undoubtedly will assist the public in determining whether there was merit or a lack of merit to the allegations against Mrs. Clinton, whether Mrs. Clinton was fairly or unfairly investigated, and whether her tenure as first lady of the United States and subsequent tenures as United States senator and United States secretary of state were positive or negative for the country.  The Archives' assertion that, by seeking disclosure of the draft indictments, Plaintiff is attempting to imply that Mrs. Clinton is guilty of criminal conduct plainly misses the mark, as one could just as easily conclude that Mrs. Clinton's experience with

---

[7]  The Archives made no effort to respond to or rebut Plaintiff's argument distinguishing the D.C. Circuit's line of cases limiting the relevant public interest to shedding light on how agencies perform their statutory duties.  Plaintiff continues to assert that those cases are distinguishable from the present case and that Mrs. Clinton's actions and conduct as first lady are relevant to what the government "was up to," "is up to," or "may be up to" should she be elected president.

the criminal justice system enhances her qualifications to be the nation's chief executive.  The

draft indictments will "shed light" on Mrs. Clinton's decades as a federal official, her fitness for

the office she currently seeks, and on "what the government is up to."  The Archives' assertions

to the contrary are neither serious nor credible.

     E.     <u>Segregability</u>.

"Even when an agency may properly withhold a responsive record under one of FOIA's

enumerated exemptions, it nevertheless must disclose any non-exempt information that is

"reasonably segregable."  *Am. Civil Liberties Union v. U.S. Dep't of State*, 878 F. Supp.2d 215,

225 (D.D.C. 2012) (*citing* 5 U.S.C. § 552(b)).  "The question of segregability is by necessity

subjective and context-specific, turning upon the nature of the documents and information in

question."  *Id.* (*citing Mead Data Central, Inc. v. U.S Dep't of Air Force*, 566 F.2d 242, 261

(D.C. Cir. 1977).  Ultimately, to discharge its burden before the district court, the agency "must

provide a reasonably detailed justification rather than conclusory statements to support its claim

that the non-exempt material in a document is not reasonably segregable." *Id.*  For example, an

agency was found to satisfy its segregability obligation where it

> stated that it had conducted a page-by-page review of all investigative records
> contained in the requested documents, and determined that each document, and
> each page of each document, contained information subject to law enforcement
> withholding exemptions.  It justified its inability to simply redact sensitive
> portions (i.e., informant names) from these documents by pointing out that the
> balance of the information remaining in the documents could still reveal the
> extent of the government's investigation, the acts on which it focused, what
> evidence of wrongdoing it is aware of, the identity of cooperating sources, and the
> agency's investigative techniques in this investigation.  The affidavits further
> attested that release of any of this information could jeopardize the investigation.
> For these reasons, we are satisfied that no portion of the withheld documents may
> be segregated and released to appellant.

*Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).

The Archives readily admits that it made no effort to conduct a segregability analysis of the draft indictments.  It claims to have followed a longstanding policy of not doing so:

> Because a draft indictment is inextricably tied to the grand jury process, the development of the indictment, illuminated as each draft carefully refines the argument for charging the accused individuals, provides a roadmap to that process.  Unlike the Evidence Memorandum, which NARA released in part, draft indictments that do not result in any further prosecutorial action are not capable of similar segregability without revealing the workings of the Grand Jury.  Again, this has been NARA's practice reaching back many years, starting with indictments drafted by the Watergate Special Prosecution Force during Watergate.

2nd Murphy Decl. at para. 7.  Obviously, the Archives erred.  It must conduct a segregability analysis of each draft indictment.  If after analyzing each record, the Archives determines that no portion of the record is reasonably segregable, it must provide a detailed, non-conclusory justification for its determination.  Following a general policy of not conducting segregability analyses of draft indictments does not satisfy FOIA.

In addition, the Archives' assertion that, unless a prosecution results, segregable material in a draft indictment can never be released without disclosing "the workings of the Grand Jury" is a *non sequitur*.  Whether an indictment has been issued has nothing to do with whether segregable material in a draft indictment can be disclosed.  Disclosure depends on any number of factors, including whether the draft includes segregable, non-grand jury material, whether the grand jury material is no longer secret, and the form of the document itself.   The Archives' blanket, boilerplate assertion to the contrary is exactly the type of generalized, conclusory claim that is insufficient to satisfy an agency's burden under FOIA.  It also begs the question, if disclosure of a draft indictment will reveal the inner workings of a grand jury, why wouldn't disclosure of an indictment returned by a grand jury do the same?  Under the Archives' analysis, a prosecutor's publication of indictment returned by a grand jury would violate Rule 6(e).  That obviously is not the law.

- 17 -

The Archives' segregability argument suffers from at least two additional flaws.  First, and as with its other arguments, the Archives ignores the mountain of grand jury material that has already been made public.  Both the Report and the Evidentiary Memorandum have already disclosed the roadmap about which the Archives claims to be concerned.  This enormous volume of publicly available material must be taken into account in a proper segregability analysis.

Second, and also demonstrated previously, the Archives reads the phrase "matters occurring before the grand jury" in Rule 6(e) too broadly.  The D.C. Circuit warned against this precise error.  "[W]e cautioned the district court about the problematic nature of applying so broad a definition, especially as it relates to the strategy or direction of the investigation."  *In re Sealed Case*, 192 F.3d at 1001 (*quoting In re Sealed Case*, 151 F.3d 1059, 1071 n.12 (D.C. Cir. 1998)).  Not all statements by prosecutors, which obviously includes draft indictments, are protected from disclosure by Rule 6(e).  "Prosecutors' statements about their investigations . . . implicate the Rule only when they directly reveal grand jury matters."  *Id.* at 1002.  Moreover, "internal deliberations of prosecutors that do not directly reveal grand jury proceedings are not Rule 6(e) material."  *Id.* at 1003.  Segregable material that does not directly reveal secret grand jury matters must be disclosed.

If, after conducting a proper segregability analysis of each draft indictment, the Archives can identify specific grand jury material that remains secret and the disclosure of which would "directly reveal" "grand jury matters" or "grand jury proceedings" within the meaning of Rule 6(e), any such material may properly be redacted from the draft.  The remainder must be disclosed.   Unless and until the Archives conducts a proper segregability analysis of each draft and justifies its determinations with detailed, non-conculsory findings, it will remain in violation of FOIA.

**III.    Conclusion.**

For the foregoing reasons and the reasons set forth in Plaintiff's opposition and cross-motion, the Archives' motion for summary judgment should be denied and summary judgment should be entered in Plaintiff's favor ordering the release of the draft indictments.

Dated:  May 2, 2016                                      Respectfully submitted,

                                                         JUDICIAL WATCH, INC.

                                                         */s/ Paul J. Orfanedes*
                                                         Paul J. Orfanedes
                                                         D.C. Bar No. 429716
                                                         425 Third Street SW, Suite 800
                                                         Washington, DC  20024
                                                         Tel:     (202) 646-5172
                                                         Fax:     (202) 646-5199
                                                         Email:  porfanedes@judicialwatch.org

                                                         *Attorneys for Plaintiff*